# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Demesa v. Adams*, 2013 IL App (1st) 122608

---

| | |
|---|---|
| Appellate Court Caption | LOVEJOY DEMESA, Plaintiff-Appellee, v. BRENT ADAMS, Secretary of Financial and Professional Regulation, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-12-2608 |
| Filed | July 30, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings arising from a complaint before the Department of Financial and Professional Regulation seeking the suspension of plaintiff's license as a registered nurse for failing to report her conviction for the felony of criminal neglect of a person with a disability, the trial court, on administrative review of the Department's decision imposing a fine and suspending plaintiff's license for a year, abused its discretion in remanding the cause for a hearing to allow plaintiff to call the Department's attorney to testify about a settlement conference and by considering plaintiff's request for discovery of earlier decisions by the Department involving similar circumstances, and the order remanding the cause for a new hearing was vacated in favor of a remand for resolution of the remaining undeveloped issues. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-14752; the Hon. Thomas Allen, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Paul Racette, Assistant Attorney General, of counsel), for appellant.

Palermo Law Firm, of Chicago (Michael Palermo and James Pittacora, of counsel), for appellee.

Panel

PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion.

Justices Quinn and Simon concurred in the judgment and opinion.

**OPINION**

¶ 1    The Department of Financial and Professional Regulation, Division of Professional Regulation (Department), filed a complaint against Lovejoy Demesa, a licensed registered nurse under the Nurse Practice Act (Act) (225 ILCS 65/50-1 *et seq.* (West 2010)), in which it sought to have Demesa's license suspended. An administrative law judge (ALJ) found that Demesa was convicted of a felony in violation of section 70-5(b)(3) of the Act (225 ILCS 65/70-5(b)(3) (West 2010)), and failed to report said felony in violation of section 70-5(b)(16) of the Act (225 ILCS 65/70-5(b)(16) (West 2010)). The ALJ recommended Demesa's license be suspended indefinitely for at least one year and that she pay a fine of $500. The Illinois Board of Nursing (Board) agreed with the ALJ's findings of fact, conclusions of law, and the $500 fine, but recommended that Demesa's license be suspended for a definite period of only seven days. The Secretary of the Department agreed with the Board's findings of fact, conclusions of law, and the $500 fine, but ordered that Demesa's license be placed on indefinite suspension for at least one year.

¶ 2    Demesa filed a complaint for administrative review before the circuit court of Cook County, raising numerous issues for the circuit court's review. The circuit court, however, remanded the matter for a hearing *de novo* before the Department regarding only two of those issues: (1) to allow Demesa to call the Department's prosecuting attorney to testify regarding an informal conference that resulted in a settlement in an earlier related case involving Demesa; and (2) to require the Department to provide discovery to Demesa of disciplinary cases regarding circumstances similar to Demesa's.

¶ 3    The Department petitioned this court for leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(6) (Ill. S. Ct. R. 306(a)(6) (eff. Feb. 26, 2010)), which we allowed. At issue before this court is: (1) whether the ALJ properly denied Demesa's request to call the Department's attorney as a witness at an evidentiary hearing; (2) whether Demesa was entitled to her request that the Department produce all cases within the past five years that had similar factual and procedural backgrounds; and (3) whether the Secretary abused his

discretion in suspending Demesa's license. We hold the circuit court abused its discretion when it sent back the matter to the Department for a hearing *de novo* because Demesa's request that the Department's prosecuting attorney testify is barred under both the advocate-witness rule and the general prohibition against the admission of settlement discussions; and because Demesa forfeited her request to the Department that it produce evidence of similar disciplinary actions it had adjudicated in the preceding five years. We decline to review whether the Secretary's decision to suspend Demesa's license was improper because, even if we did answer the issue, several issues raised by Demesa in her complaint for administrative review would remain undeveloped. Accordingly, we reverse the judgment of the circuit court and remand the matter to the circuit court for proceedings consistent with this decision.

¶ 4                                JURISDICTION

¶ 5        On August 15, 2012, the circuit court remanded the matter to the Department for a hearing *de novo*. On November 16, 2012, the Department petitioned this court for leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(6). Ill. S. Ct. R. 306(a)(6) (eff. Feb. 26, 2010). Illinois Supreme Court Rule 306(a)(6) allows a party to petition this court for leave to appeal "an order of the circuit court which remands the proceeding for a hearing *de novo* before an administrative agency." Ill. S. Ct. R. 306(a)(6) (eff. Feb. 26, 2010); *Trunek v. Industrial Comm'n*, 345 Ill. App. 3d 126, 128 (2003). This court granted the Department's petition on November 5, 2012. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 306(a)(6). Ill. S. Ct. R. 306(a)(6) (eff. Feb. 26, 2010).

¶ 6                                BACKGROUND

¶ 7        In October of 2008, the Department filed a three-count complaint against Demesa. At the time of the complaint, DeMesa was "the holder of a Certificate of Registration as a Registered Nurse, License No. 041325058, issued by the Department in 2001." The Department alleged:

> "On or about October 9, 2007, [Demesa] pleaded guilty to Criminal Neglect of a Person with a Disability, a Class 3 Felony, before the Circuit Court for the Eighteenth Judicial Circuit, County of DuPage, Illinois, in Case Number 06 CF 3387."

Demesa was sentenced to 24 months' probation "and incarcerated four days in Du Page County Jail, time considered served." The Department stated that, based on the conviction, Demesa's certificate of registration could be revoked or suspended pursuant to section 70-5(b)(3) of the Act. 225 ILCS 65/70-5(b)(3) (West 2010). Count II alleged the same facts as count I, but further alleged that Demesa's conduct violated section 70-5(b)(7) of the Act. 225 ILCS 65/70-5(b)(7) (West 2010). Count III re-alleged the same facts as counts I and II, but added that Demesa "failed to report the plea of guilty to the Department." Accordingly, the Department alleged Demesa violated section 70-5(b)(16) of the Act (225 ILCS 65/70-5(b)(16) (West 2010)).

-3-

¶ 8    On April 26, 2010, Demesa filed an answer to the Department's complaint.[1] The Department, on May 10, 2010, sought to strike Demesa's answer for failure to comply with section 1110.120 of title 68 of the Illinois Administrative Code (Code) (68 Ill. Adm. Code 1110.120 (2004)).

¶ 9    On July 2, 2010, Demesa filed a motion to strike and dismiss the Department's complaint arguing that she had already "been brought in front of the [Department] previously for the same conduct underlying the conviction, and had entered a Consent Order allowing for a reprimand on her license." According to Demesa, the Department sought to "discipline her for essentially the same conduct as the Consent Order," which Demesa explained was "for the allegations of criminal conduct out of which the conviction arose." Demesa further argued the Department was fully aware that there was an ongoing criminal prosecution when she entered into the consent order and that "she made no attempt to hide that fact from" the Department. Demesa characterized the Department's position as "an attempt to discipline her twice, for conduct that if it even violates the Nursing Act, is a minor technical violation. That is, failure to report to [the Department] a conviction in a criminal case of which [the Department] was fully aware."

¶ 10    Demesa attached to her motion an affidavit she prepared, in which she attested, in relevant part, "[o]n November 11, 2006, I participated in a settlement conference with [the Department] regarding allegations that I improperly removed *** a patient for whom I provided in-home nursing services, from her respirator." Demesa added that "[a]lthough I denied that such conduct was improper, at the settlement conference I agreed to allow the Department to impose a discipline on my professional nurse license" and "[t]hat discipline was a [r]eprimand." Demesa also attested that "[a]t that conference, I informed the Department's attorney Beth Renee Nussbaum, that there was a criminal investigation and complaint pending against me arising out of the same factual allegations." She also attested to another settlement conference, stating that "[e]arlier this year I attended another settlement conference with the Department and attorney Nussbaum and Kelly,[2] arising out of the allegations in the current [c]omplaint against me" and that "[t]he offer from Nussbaum to settle those charges was that I agree to a 90 day suspension of my professional license."

¶ 11    In response, the Department argued that the consent order, in case number 200600221, is a different case than the current case, case number 200804528. According to the Department, the consent order was approved by the Secretary on April 6, 2007. The complaint in the current case, case number 200804528, "was brought to the Department's Complaint Intake Unit in June 2008 by Liam C. Brennan, the Assistant State's Attorney, in Case Number 06 CG 3387," and was based on Demesa's failure to report her plea of guilty on October 9, 2007. As of June 2008, the guilty plea had not been reported. The Department

---

[1]In between the time the Department filed its complaint and Demesa filed her answer, Demesa had been held in default. It is not clear from the record when or how the default order was vacated. We assume that the default order was vacated because the case proceeded with Demesa defending the allegations against her.

[2]Demesa did not explain in her affidavit who "Kelly" was.

asserted that "[a] review of a time chronology reflects that at the time of the November 12, 2006, informal conference [Demesa] had not pleaded guilty to the Felony." The Department also stated that "[i]n other department cases, a Respondent receives a discipline in one case based on conduct that is a violation of the practice act and receives an additional discipline in a second case for a conviction."

¶ 12    On July 2, 2010, Demesa filed a request for discovery. Relevant to this appeal, Demesa asked the Department to provide her the following: "[c]opies of all notes from the files of Beth Renee Nussbaum from case 20084528, including notes taken during the informal conference held on November 12, 2006." In her response to the Department's discovery request, Demesa identified Nussbaum as a potential witness who may be called to testify.

¶ 13    On July 6, 2010, ALJ Sadzi Oliva entered a written order addressing the Department's motion to strike the answer filed May 5, 2010, and Demesa's motion to strike and dismiss the Department's complaint. ALJ Oliva found that Demesa's answer failed to comply with section 1110.120(b) of title 68 of the Code (68 Ill. Adm. Code 1110.120(b) (West 2004)) and discounted Demesa's contention that the Department sought to discipline her for conduct which she had already been disciplined, finding that Demesa "has not been previously disciplined for a felony conviction or for failure to report." Rather, Demesa "entered into a Consent Order with the Department disciplining her for the conduct underlying the felony conviction." ALJ Oliva found that the felony conviction occurred on October 9, 2007; whereas the consent order was approved by the director on April 6, 2007. Accordingly, ALJ Oliva found that felony conviction and failure to report it occurred after the consent order became effective, and stated that "[t]hese are separate violations of the Nurse Practice Act." ALJ Oliva did find, however, that count II of the Department's complaint was "duplicitous[sic]." Therefore, ALJ Oliva granted the Department's motion to strike Demesa's answer; denied Demesa's motion to strike and dismiss the Department's complaint as to counts I and III, but granted the motion as to count II of the Department's complaint; and ordered Demesa to file a proper answer.

¶ 14    On July 8, 2010, Demesa filed a second request for discovery. Relevant to this appeal, Demesa asked that the Department produce the following: "For the past five years, identify all cases *** where a respondent received a discipline in one case based on conduct that violates the practice act, and received a second discipline in a second case for a conviction."

¶ 15    On July 16, 2010, Demesa filed her second answer to the Department's complaint in which she stated that she "admits that as of the date of the filing of the Complaint she had not reported said conviction to [the Department]; but states affirmatively that once [the Department] received notice of the conviction on June 8, 2008, any such obligation for her to make a report of the conviction was mooted."

¶ 16    On August 27, 2010, the Department sought to strike Demesa's discovery request that the Department produce all cases in the past five years where a respondent received discipline in one case based on conduct that violates the Act, and received a second discipline in a second case for a conviction based on the same underlying conduct. The Department argued that Demesa's request was outside the scope of discovery permitted by sections 1110.130(b) and (d). 68 Ill. Adm. Code 1110.130(b), (d) (2004). Alternatively, the

Department argued that the request could "be freely deduced from records available for public inspection." Specifically, the Department keeps an index of its formal decisions, which is available to the public during regular business hours. Additionally, the Department sought to strike Demesa's discovery request that the Department produce the notes attorney Nussbaum took during an informal conference on November 12, 2006. The Department argued that the request was outside the scope of discovery permitted by sections 1110.130(b) and (d). 68 Ill. Adm. Code 1110.130(b), (d) (2004). Alternatively, the Department argued that evidence of preliminary negations is irrelevant and prejudicial.

¶ 17    On October 26, 2010, a hearing was held before ALJ Canavan. Initially, ALJ Canavan found that Nussbaum should not be called to testify, stating "I don't think she should be called. I don't think it is proper." Additionally, ALJ Canavan did not allow introduction of evidence of 18 indictments entered against Demesa based on Demesa's argument that they were prejudicial to her.

¶ 18    At the hearing, the Department first called Demesa to testify. Demesa testified that she is a licensed registered nurse, license number 041325058, and admitted that she is subject to the Act and its rules. She admitted that on October 9, 2007, she pled guilty to criminal neglect of a person with a disability, a Class 3 felony, in the circuit court of Du Page County, Illinois. She was found guilty of criminal neglect of a person with a disability and was sentenced to 24 months' probation. When asked on direct examination whether she had notified the Department that she had been convicted of a felony, she answered "I was not aware I needed to." She later clarified that she "was not aware that [she] needed to report." At this point, the Department successfully entered into evidence, without objection, a copy of the criminal sentencing order in case number 06 CF 3387, dated October 9, 2007, which showed that Demesa was found guilty of criminal neglect of a person with a disability. DeMesa further admitted on direct examination that she had to renew her license in 2008. She similarly testified that she was unaware that she had to inform the Department of her conviction when she renewed her license in 2008. The Department then rested.

¶ 19    Demesa testified on her own behalf, stating she was currently "a home health nurse and a hospice nurse." Demesa then successfully entered into evidence, over the Department's objection, the consent order dated April 6, 2007. The consent order, under the heading "stipulations," provided, in relevant part, that information had "come to the Department that [Demesa], while working *** as an agency nurse, was sent on assignment to a home health patient, a child, and took an act without a physician's order, which in her belief was in the best interest of the child. The child was not harmed." The consent order stated that this allegation would, if proven, constitute grounds for a suspension or revocation of her license according to section 10-45(b)(7) of the Act. 225 ILCS 65/10-45(b)(7) (West 2002). The consent order also provided the following:

> "As a result of the foregoing allegation(s), the Department held an Informal Disciplinary Conference on November 12, 2006, at the offices of the Department ***. Laura Ferrio appeared as a member of the Board of Nursing of the State of Illinois and Beth Renee Nussbaum appeared as an attorney for the Department. [Demesa] appeared in person, represented by her attorney ***.

[Demesa] offers in mitigation that she admitted the allegations and has cooperated with the Department. [Demesa] had the best care of the child in mind and is willing to go above and beyond the call of duty. [Demesa] is aware, however, that she must obtain a physician's order first. [Demesa] has been licensed since 2001 without prior discipline."

The consent order further provided that Demesa waived the following rights: written charges, a hearing, to contest the charges, and administrative review. The consent order was agreed to under the condition that Demesa's license be reprimanded. The parties, including the Secretary of the Department, signed the consent order.

¶ 20    Demesa testified that she was present at the informal conference on November 12, 2006, and that Nussbaum, her attorney, "and another" were present. Demesa testified that she was reprimanded after the conference.

¶ 21    Demesa further testified that she was arrested in 2005, which resulted in her 2007 conviction. Demesa testified that the underlying facts of the 2005 arrest and the 2007 conviction were discussed at the November 12, 2006, conference. The 2007 conviction, Demesa testified, resulted in a sentence of two years' probation, which she successfully completed in October of 2009. Demesa then successfully had entered into evidence, over the Department's objection, a copy of her report and order of discharge from probation. She stated she never violated her terms of probation. Demesa admitted, however, that she never reported this criminal conviction because she "thought they already knew." Demesa testified that she is not denying her conviction or that she failed to report the conviction.

¶ 22    On cross-examination, Demesa admitted that she signed the consent order eight months prior to her plea of guilty in her criminal trial and that the consent order was approved six months before she pled guilty.

¶ 23    On December 29, 2010, Chief ALJ John Lagattuta issued his report and recommendation. ALJ Lagattuta explained that ALJ Canavan conducted the formal evidentiary hearing on October 26, 2010, and received the transcript of proceedings on December 1, 2010. ALJ Canavan, however, passed away prior to issuing his recommendation. Accordingly, ALJ Lagattuta "reviewed the file and the transcript of proceedings" before issuing his recommendation. ALJ Lagattuta found that Demesa was the holder of a then-currently active registered nurse license. She pled guilty and was convicted of one count of neglect of a person with a disability, a Class 3 felony, on October 9, 2007. She was sentenced to 4 days in jail and 24 months' probation. ALJ Lagattuta further found that Demesa "failed to report said conviction to the Department on her application to renew her license in 2008." Accordingly, ALJ Lagattuta concluded that "[t]he Department met its burden in this case by proving by clear and convincing evidence that [Demesa] violated the Illinois Nursing and Advanced Nursing Practice Act, pursuant to 225 ILCS 65/70-5(b)(3) and (16)." Therefore, ALJ Lagattuta recommended Demesa's license be suspended indefinitely for a minimum of one year and that she pay a $500 fine.

¶ 24    On May 6, 2011, the Board issued its findings of fact, conclusions of law, and recommendation to the Secretary. The Board adopted both the findings of fact and the conclusions of law made by ALJ Lagattuta. The Board agreed that Demesa should pay a

$500 fine, but recommended that Demesa's suspension be reduced to a "definite period" of seven days. The Board based its recommendation "on the lack of patient harm and [Demesa's] previous cooperation with the Department in an earlier related case."

¶ 25       On April 12, 2012, the Secretary issued his order in which he adopted the Board's findings of fact and conclusions of law, but rejected part of the Board's recommendation. The Secretary ordered that Demesa's license be placed on indefinite suspension and to pay a $500 fine. The Secretary ordered that Demesa could not petition to restore her license for at least one year from the effective date of the order. The Secretary reasoned, in relevant part:

"I have determined that although this particular incident did not result in harm to the patient, [Demesa] was convicted of a serious offense. Therefore, the recommendation of the ALJ that [Demesa's] license be indefinitely suspended for a minimum of one year is proper here. This period of suspension is appropriate as the felony conviction was of such a nature as to warrant a serious discipline which will adequately protect the citizens of Illinois who may come under [Demesa's] care in the future."

¶ 26       On April 20, 2012, Demesa filed a complaint for administrative review in the circuit court of Cook County. Demesa listed the following points of alleged error for the circuit court's review: (1) indefinitely suspending her license even though she was already reprimanded for the same set of facts, which Demesa characterizes as "administrative [d]ouble [j]eopardy"; (2) that the suspension of her license was "excessive under the circumstances; out of proportion to the severity of the violation; and out of proportion to disciplines imposed by [the Department] for substantially similar violations, such as to deprive Demesa of her rights to a fair and equal treatment under the principles of Equal Protection under the Law, and Due Process"; (3) the decision to suspend her license was made without consideration of Demesa's own testimony "and other evidence in mitigation"; (4) the Department, "through its Hearing Officer, denied Demesa the opportunity to call certain of her witnesses in mitigation of any anticipated penalty, in violation of her due process rights to a fair and impartial hearing on the charges against her"; and (5) that her due process rights to a fair and impartial hearing and proper consideration of the evidence was violated because the hearing officer who prepared the report did not attend the hearing, observe witnesses, rule on motions, or consider evidence due to ALJ Canavan's death.

¶ 27       In support of her complaint, Demesa filed a memorandum of law in which she explained that she "never denied that she failed to inform the [Department] of her felony conviction." She added that "she admitted all relevant allegations in the [c]omplaint." Demesa argued that the Department denied her access to certain discovery requests that focused on mitigation. Specifically, and relevant to this appeal, Demesa pointed out that she asked the Department to produce " 'for the past five years, *** all cases *** where a respondent received a discipline in one case based on conduct that violates the practice act, and received a second discipline in a second case for a conviction' " and that she "sought to compel the testimony of the attorney and Board of Nursing member who attended the earlier settlement conference, for the purpose of having them testify that Demesa answered all of their concerns and questions, and to show the [Department's] knowledge of the status of the criminal charges."

¶ 28       In response, the Department pointed out that Demesa does not dispute that she was

convicted of a felony or that she failed to report her conviction on her 2008 license renewal application. Accordingly, the Department argued that there was no dispute that it met its burden of proving, by clear and convincing evidence, that Demesa violated the Act. In regard to Demesa's requested discovery of five years' worth of past disciplines in similar circumstances issued by the Department, the Department argued that Demesa waived her objection, explaining:

> "The Department filed a motion to strike this discovery request on the grounds that it sought material outside the allowable scope of discovery and that the information was readily available to [Demesa]. *** [Demesa] made no response to this motion, nor did she seek to compel the production of such documents. Indeed, [Demesa] did not even raise the issue with ALJ Canavan at the hearing. [Demesa] has waived her right to claim prejudice based on her failure to respond to the Department's objections."

Notwithstanding waiver, the Department also argued that the request was beyond the scope of allowable discovery, the information was publicly available, and the Department was not required to consider the information.

¶ 29    Regarding Demesa's argument that she should have been allowed to call the Department's attorney as a witness, the Department argued that Demesa was not prejudiced because Demesa testified concerning the same evidence. Specifically, the Department stated that "ALJ Canavan allowed [Demesa] to testify, over the Department's objection, that the underlying facts of the conviction were discussed with Ms. Nussbaum at the 2006 settlement conference." Additionally, the Department argued that under the advocate-witness rule, Demesa was required to obtain leave of the ALJ to call the Department's prosecuting attorney to testify, which she did not do.[3]

¶ 30    In reply, Demesa argued that the Department did not consider her mitigating evidence because it did not produce it during discovery. Namely, the Department failed to produce evidence of how the Department had historically ruled in similar circumstances. Similarly, Demesa argued her evidence in mitigation was hampered when she was not allowed to call the prosecuting attorney, Nussbaum, to testify. According to Demesa, without Nussbaum's testimony, she could not present the following evidence:

> "whether or not the [Department] had actual knowledge of the pending criminal charges at the time it imposed the Consent Order; whether or not the [Department] considered these charges when offering Demesa a Reprimand; whether or not the [Department] undertook some sort of docket or reminder system to follow up on the underlying criminal charges; and whether or not the [Department] had actual knowledge of the conviction *** even before [she] renewed her license, but took no action until afterwards."

Demesa further argued that the Department's "index" would not have revealed similar

---

[3]The Department additionally responded to Demesa's other arguments, not part of this appeal, arguing that the Department did consider mitigating evidence, that the Director properly considered Demesa's felony conviction rendering the final order; and that Demesa was not denied due process due to ALJ Canavan's death prior to issuing his recommendation.

circumstances as hers because she asked for "a very specific set of disciplinary cases that are not found in the index." Demesa quoted what her own entry in the index looked like, stating:

> "Lovejoy, DeMesa, Plainfield–registered nurse license (041-325058) indefinitely suspended for a minimum of one year and fined $500 for having been convicted of a felony for Criminal Neglect of a Person with a Disability, and for failure to report same to the Department."[4]

Accordingly, Demesa asserted that her "own situation" would not have been discovered by reviewing the index. Additionally, Demesa argued that her request was made in response to the Department's own statement that this is how the Department had ruled in similar cases.

¶ 31    In regard to her attempt to call Nussbaum as a witness, Demesa argued that the Department "should not be allowed to shield her from testifying by assigning her to a second case, if she has the relevant information." Demesa further added that she "wanted Nussbaum to testify regarding the [Department's] institutional knowledge that it had, in fact, received notice of the pending criminal charges, what the [Department] understood those charges to be, whether or not [the Department] considered those charges when offering the Reprimand as a discipline, and other related topics." According to Demesa, this all would have been relevant mitigating evidence she could have used in her defense, which in turn, violated her due process rights to a fair hearing. At oral argument before the circuit court, Demesa added that Nussbaum could additionally testify to Demesa's cooperation during the consent order process.

¶ 32    After a hearing, the circuit court reversed the Secretary's decision and remanded the matter for a new hearing. The circuit court first addressed why it believed that Demesa should have been allowed to call Nussbaum to testify, reasoning, in relevant part:

> "Here *** there is a request to have the hearing *** somebody who was present at the informal conference–I think there was more than one lawyer from the state–testify and be called as a witness. That was denied.
>
> And I know that [the Department] makes the reasonable response like, well, hey, they still got the same information out of that hearing from Ms. DeMesa. But it's not often that adversaries say, well, don't worry. The other guy's witness is going to testify about that, and therefore–you know, most of the time the adversarial witnesses are saying the other witnesses aren't telling the truth.
>
> But the problem here is we have got a layperson. She is just going along for the ride, admitting what she did. And she's at a conference. But other people are there who are representing the licensing agency or the Department. And they are–they have information as to the scope of that–scope of that discussion, what their knowledge was of the–the

---

[4]We note that the index referred to is not actually part of the record before this court. In her reply before the circuit court, however, Demesa stated that "[s]aid index is the subject of [her] motion to supplement the record on appeal etc., but an abbreviated portion of the index entry is attached hereto." Neither the motion to supplement the record, nor the abbreviated portion of the index is part of the record before this court. All we have is the quoted material from DeMesa's reply in support of her complaint for administrative review.

events in 2005 and–and that information, I don't think, is available to [Demesa] by just putting [Demesa] on.

> Those are *** two different categories of *** witnesses, as far as *** someone who wants to evaluate and assess credibility or get information.

> So that part is troubling that you can't call a witness and the whole prosecutorial thing, [the Department], you are right. They have to make a compelling case. But it certainly can't, you know–I don't know what the outcome of that would be, but I think that you have got to let people put on a case. And that part *** is a little troubling."

The circuit court further noted that it was concerned that Demesa's actual renewal application was not part of the record. The circuit court also made the following conclusion, stating in relevant part:

> "I think this has to go back to for a hearing on the mitigation. And I think that the discovery issues should be revisited *** with the hearing officer. I think that *** [Demesa's] attempt to put on a case was unduly restricted.

> And, you know, it's a basic due process entitlement to anybody, whether it's a criminal case, a civil case, or any case to be able to put on–present evidence that's relevant and not out in right field or left field. And I think that that needs to be done here to at least afford [Demesa] the opportunity to present that evidence.

> And that wasn't done here. So I'm going to remand this back to the–to the Department for a *** new hearing. And I think that counsel better make your *** discovery requests new there."

Regarding Demesa's discovery request that the Department provide decisions it had issued in the past five years dealing with a similar factual and procedural scenario has her own, the court found the request "pertinent and reasonable."

¶ 33 On November 16, 2012, the Department petitioned this court for leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(6). This court granted the Department's petition on November 5, 2012.

¶ 34                                    ANALYSIS

¶ 35 Before this court, the Department raises three issues: (1) whether the ALJ properly denied Demesa's request to call the Department's attorney as a witness at an evidentiary hearing (2) whether Demesa was entitled to her request that the Department produce all cases within the past five years that had similar factual and procedural background; and (3) whether the Secretary abused his discretion in suspending Demesa's license. The Department asks this court to vacate the circuit court's order remanding the matter for a new hearing. It additionally asks this court to affirm the Secretary's sanction against Demesa and argues that remand to the circuit court is not necessary in this case. We will discuss each issue, including the standard of review, below.

¶ 37    The Department, in its brief,[5] states that the proper standard of review for this interlocutory appeal brought pursuant to Illinois Supreme Court Rule 306(a)(6) is whether the circuit court abused its discretion. The Department acknowledges that the standard of review of a Rule 306(a)(6) appeal has not been established by case law, but looks to this court's established criteria for reviewing similar petitions invoking Illinois Supreme Court Rule 306(a)(1). Ill. S. Ct. R. 306(a)(1) (eff. Feb. 26, 2010); *Allied American Insurance Co. v. Culp*, 243 Ill. App. 3d 490, 492 (1993). Subsection (a)(6) of Illinois Supreme Court Rule 306, at issue here, provides for an interlocutory appeal "from an order of the circuit court which remands the proceedings for a hearing *de novo* before an administrative agency." Subsection (a)(1) of Rule 306, similar to subsection (a)(6), allows for parties to petition for an interlocutory appeal before this court, but "from an order of the circuit court granting a new trial." The Department maintains that the similarities between an order granting a new trial and an order granting a *de novo* hearing before an administrative agency provide a basis for this court to utilize an abuse of discretion standard of review in this case.

¶ 38    Demesa, in her brief before this court, did not directly address the standard of review as it pertains to appeals brought pursuant to Illinois Supreme Court Rule 306(a)(6). Rather, she states that an abuse of discretion standard is appropriate when a reviewing court reviews a sanction imposed by an administrative agency.

¶ 39    We agree with the Department's contention that the abuse of discretion standard is appropriate here. Like the Department, we were also unable to find any case law addressing the standard of review of an appeal brought under Rule 306(a)(6). We do note, however, that this court has held that appeals from interlocutory orders are reversed only where the circuit court has abused its discretion. *Rosolowski v. Clark Refining & Marketing*, 383 Ill. App. 3d 420, 427 (2008) (citing *Bishop v. We Care Hair Development Corp.*, 316 Ill. App. 3d 1182, 1189 (2000)). Accordingly, we will only reverse the order of the circuit court remanding the matter for a new hearing before the Department if the circuit court abused its discretion.

¶ 40                                    Attorney as a Witness

¶ 41    The Department first asks this court to review whether ALJ Canavan properly denied Demesa's request that she be allowed to call Renee Nussbaum, the attorney for the Department both for the consent order and for the current matter, as a witness. The Department initially argues that Demesa forfeited her request by not formally requesting that Nussbaum be called as a witness. Forfeiture aside, the Department argues that Nussbaum's testimony would have added nothing of substance to the proceedings, as the consent order, signed and prepared by Nussbaum, was admitted into evidence. The Department further questions the relevance of Nussbaum's testimony, as the informal conference occurred on

---

[5]The Department's brief is its petition for leave to appeal. On November 16, 2012, the Department filed a notice of election to allow its petition for leave to appeal to stand as its opening brief pursuant to Illinois Supreme Court Rule 306(c)(7). Ill. S. Ct. R. 306(c)(7) (eff. Feb. 26, 2010). We will refer to it as the Department's brief to avoid confusion.

November 6, 2006, whereas the basis for the current matter, *i.e.*, her conviction and failure to report said conviction, did not occur until at least October of 2007. Therefore, the Department could not have known of Demesa's conviction at the November 2006 informal conference. The Department also argues that the advocate-witness rule precludes an attorney to be a fact witness and that statements made during settlement negotiations are not admissible into evidence.

¶ 42    In response, Demesa argues that Nussbaum was "her only corroborating witness in mitigation." According to Demesa, Nussbaum, as the attorney who conducted the initial settlement conference, would have been able to testify to show the Department's "institutional knowledge regarding the charges, how the [Department] investigated them," and whether the Department had "knowledge of the status of the criminal proceedings at all relevant times." Demesa asserts that she did inform the Department that Nussbaum may be called to testify. Demesa acknowledges that statements made during settlement conferences typically are not admissible, but argues that "that policy does not apply here." She does not cite any authority for this proposition, but states that her subsequent trial was on a different issue and that she should be allowed to present the evidence because it is in mitigation of her own anticipated penalty. Demesa did not address the Department's argument that the advocate-witness rule barred Nussbaum's testimony.

¶ 43    Under the advocate-witness rule, an attorney cannot act as both an advocate and a fact witness in the same case. *Northern Moraine Wastewater Reclamation District v. Illinois Commerce Comm'n*, 392 Ill. App. 3d 542, 573 (2009). Although not an absolute rule, such an attorney can be allowed to testify if, in its discretion, the court determines that the testimony is necessary. *Id.* "The rule reflects the inconsistency between the role of an advocate and that of a witness; the function of an advocate is to advance or argue the cause of another, while that of the witness is to state the facts objectively." *People v. Gully*, 243 Ill. App. 3d 853, 859 (1993).

¶ 44    In this case, we do not think that the ALJ abused his discretion when he ruled that Demesa could not call Nussbaum to testify. A chronological look at the relevant proceedings helps illustrate why we question whether Nussbaum's testimony would be necessary in this case as to allow Nussbaum to testify despite the advocate-witness rule. According to the consent order, "an Informal Disciplinary Conference" occurred on November 12, 2006. The consent order itself, as approved by the Secretary, is dated April 6, 2007. The consent order stated that "[t]he allegations *** if proven *** would constitute grounds for suspending or revoking [Demesa's] license *** on the authority of" section 10-45(b)(7) of the Act. Section 10-45(b)(7) of the Act, at that time, provided that the "[e]ngaging in dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public" was a grounds for disciplinary action. 225 ILCS 65/10-45(b)(7) (West 2002).[6] Demesa pled guilty to a felony on October 9, 2007, approximately six months after the consent order was entered. In October of 2008, the Department brought its complaint against Demesa under

_____

[6]This section was renumbered as 225 ILCS 65/70-5 by Public Act 95-639, §125, effective October 5, 2007.

sections 70-5(b)(3) and (b)(16) of the Act. Section 70-5(b)(3) of the Act provides that a grounds for disciplinary action under the Act is "[c]onviction by a plea of guilty." 225 ILCS 65/70-5(b)(3) (West 2010). Similarly, section 70-5(b)(16) provides that a ground for a disciplinary action under the Act is "[f]ailure of a licensee to report to the Department any adverse final action taken against *** her by *** any court *** related to acts or conduct similar to acts or conduct that would constitute grounds for action as defined in this Section." 225 ILCS 65/70-5(b)(16) (West 2010). It follows that she could not fail to report her felony until after October 9, 2007. Unlike the consent order, which dealt with unprofessional, dishonorable, or unethical conduct, the current case dealt with Demesa's felony conviction and her failure to report said conviction. Accordingly, at the time of the November 12, 2006, conference, Nussbaum would not have had any knowledge of Demesa's conviction, which did not occur until October 9, 2007.

¶ 45    The necessity of such information is further lessened because Demesa testified concerning what happened at the November 12, 2006, conference. Additionally, it was not disputed that she cooperated with the Department. This is shown in the Board's recommendation to the Secretary, noting Demesa's "previous cooperation with the Department in an earlier related case."

¶ 46    Furthermore, the November 12, 2006, informal conference resulted in a settlement as evidenced by the consent order. Settlement and negotiation matters are generally inadmissible. *Liberty Mutual Insurance Co. v. American Home Assurance Co.*, 368 Ill. App. 3d 948, 960 (2006). Such evidence is typically prohibited for two reasons "(1) an agreement to settle does not constitute an admission of guilt and is therefore irrelevant; and (2) admitting evidence of settlements and negotiations would contravene public policy by discouraging litigants from settling before trial." *Id.* We agree with the Department's contention that Nussbaum's testimony regarding the informal conference conducted November 12, 2006, is further barred as it was conducted during a settlement conference. We note that Demesa did acknowledge that settlement and negotiations to settle are typically inadmissible, but urges this court to disregard this general rule because her subsequent hearing was on a different issue and she sought to admit such evidence as evidence of mitigation. Demesa, however, cites no authority for this proposition. Accordingly, we see no reason to depart from the general rule that matters discussed in settlement conferences are not admissible.

¶ 47    Therefore, we hold that the circuit court abused its discretion when it remanded the matter for a new hearing to allow Demesa to call Nussbaum to testify regarding the events at the November 12, 2006, conference.

¶ 48                                                    Past Decisions

¶ 49    Next, the Department argues that Demesa was not entitled to discovery of its earlier decisions involving similar circumstances. Initially, the Department contends that Demesa forfeited this request. The Department pointed out that after Demesa requested the decisions, it filed a motion to strike the request. Demesa, however, failed to file a response to the Department's motion, to file a motion to compel, and she did not raise the issue before ALJ

-14-

Canavan. Accordingly, the Department asserts that Demesa abandoned her request by not raising the issue at the administrative level.

¶ 50      Notwithstanding forfeiture, the Department argues that their rules of practice only allow for limited discovery and that Demesa never attempted to show that her request fell within the Department's limited discovery rules. Additionally, the Department argues that the decisions were available to the public during normal business hours and characterizes Demesa's request as an attempt to have the Department perform legal research on her behalf.

¶ 51      Demesa, in response, does not address the Department's forfeiture argument. Rather, she argues that the evidence of past decisions would show whether the Department issued consistent disciplines for similar circumstances. She additionally maintains that despite the Department's argument to the contrary, the evidence of the past decisions is not available to the public.

¶ 52      It is well settled that on administrative review a party forfeits any issue that it failed to raise in proceedings before the administrative agency. *Board of Education, Joliet Township High School District No. 204 v. Board of Education, Lincoln Way Community High School District No. 210*, 231 Ill. 2d 184, 205 (2008); *SMRJ, Inc. v. Russell*, 378 Ill. App. 3d 563, 576 (2007). In this case, we hold that Demesa forfeited her discovery request for all similar decisions issued by the Department for the previous five years. Our review of the record shows that she did not respond to the Department's motion to strike the discovery request, she did not seek to compel the production of the documents, and most importantly, she did not raise the issue before ALJ Canavan at the evidentiary hearing. Therefore, ALJ Canavan did not rule on the issue, nor was the issue considered by Chief ALJ Lagattuta in his report or recommendation, or by the Board in their report or recommendation, or by the Secretary in his final administrative decision. This case highlights the importance of developing an issue before an administrative agency because the Department claims the cases are readily available while Demesa claims they are not. The record, however, contains minimal reference to the issue and does not answer whether the material is easily accessible by the public. Based on the information before us, we are not able to determine whether or not the so called index of public decisions is available to the public. Accordingly, we hold that the circuit court abused its discretion by considering this issue on administrative appeal because Demesa forfeited the issue by not properly raising it and thereby failed to develop the issue before the administrative agency.

¶ 53                        Suspension of License

¶ 54      The Department's final contention before this court is whether the Secretary abused his discretion when he suspended Demesa's license. The Department asks that this court affirm the decision of the Secretary without further remand to the circuit court. Demesa, however, raised several issues in her complaint for administrative review that were not addressed or ruled upon by the circuit court. The circuit court remanded the matter to the Department for only two reasons: to allow Nussbaum to testify; and to have the Department produce evidence of similar disciplines in other cases. The circuit court did not address the remaining issues brought in Demesa's complaint for administrative review, which include the

following: whether Demesa was punished twice for the same set of facts, a situation Demesa characterizes as "administrative [d]ouble [j]eopardy"; whether the suspension of Demesa's license was excessive; whether the decision to suspend Demesa's license was made without consideration of Demesa's own testimony; and whether Demesa's due process rights to a fair and impartial hearing were compromised due to ALJ Canavan's death. Although the parties discuss in their briefs before this court the issue of whether or not the punishment issued by the Secretary was proper, the remaining issues were not briefed by both parties. Although we acknowledge the Department's concerns of judicial economy, in this case, most of the issues raised by Demesa in her complaint for administrative review filed in the circuit court remain undeveloped. Accordingly, we vacate the circuit court's order remanding this matter for a new hearing and remand this matter to the circuit court for proceedings consistent with and limited to this decision.

¶ 55                                  CONCLUSION

¶ 56        Reversed and remanded.