NOTICE
Decision filed 09/07/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200212-U

NO. 5-20-0212

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| CRISTY CAWTHON, | ) | Petition for Direct |
| | ) | Administrative Review of |
| Petitioner, | ) | an Order of the Illinois |
| | ) | Human Rights Commission. |
| v. | ) | |
| | ) | |
| ILLINOIS HUMAN RIGHTS COMMISSION, | ) | Charge No. 2019SF1632 |
| ILLINOIS DEPARTMENT OF HUMAN | ) | EEOC No. 21BA90895 |
| RIGHTS, and MARION COUNTY HOUSING | ) | ALS No. 20-0105 |
| AUTHORITY, | ) | |
| | ) | |
| Respondents. | ) | |

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Boie and Justice Welch concurred in the judgment.

**ORDER**

¶ 1   *Held*: The Illinois Human Rights Commission did not abuse its discretion in sustaining the Illinois Department of Human Rights' dismissal of Cristy Cawthon's charge of disability discrimination for lack of substantial evidence.

¶ 2   Petitioner, Cristy Cawthon, appeals *pro se* from a final order entered by the Illinois Human Rights Commission (Commission) sustaining the Illinois Department of Human Rights' (Department) dismissal of Cawthon's charge of disability discrimination for lack of substantial evidence. For the reasons that follow, we affirm.

1

¶ 3                                BACKGROUND

¶ 4     Cawthon worked for the Marion County Housing Authority (Housing Authority) as a part-time receptionist from August 15, 2016, until her position was eliminated on April 13, 2018. On April 4, 2019, Cawthon filed a charge of discrimination with the Department alleging that the Housing Authority discriminated against Cawthon because of her disabilities. Cawthon listed her disabilities as erythema multiforme major, fibromyalgia, posttraumatic stress disorder (PTSD), and memory disorder. Cawthon alleged that the Housing Authority failed to reasonably accommodate her disabilities, discharged her because of her disabilities, and failed to reassign her to another position because of her disabilities.

¶ 5     The Department investigated Cawthon's charge of discrimination. As a part of its investigation, the Department interviewed Cawthon, the Housing Authority's executive director, Kelly Tinsley, and the Housing Authority's assistant director, Tricia Higgins. The Department also received several documentary items which included, *inter alia*, Cawthon's medical records confirming her disabilities and a letter Cawthon sent to Tinsley, dated April 20, 2018. The Department's investigation revealed the following.

¶ 6     On August 15, 2016, the Housing Authority hired Cawthon as a part-time receptionist. When she was hired, Cawthon informed the Housing Authority that she was limited to working part-time, and the Housing Authority allowed Cawthon to do so. From August 2017 to October 2017, the Housing Authority also employed a part-time administrative assistant who helped cover the receptionist position. In October 2017, the administrative assistant moved into a full-time position in the Housing Authority's

2

accounting department. Due to the administrative assistant vacancy, the Housing Authority considered employing a full-time receptionist to replace the part-time position held by Cawthon and to cover the part-time administrative assistant's responsibilities. Tinsley indicated that the Housing Authority determined that it needed one full-time receptionist due to the Housing Authority's business and funding needs.

¶ 7    On January 10, 2018, the Housing Authority advertised a full-time receptionist position in the newspaper. After seeing the advertisement, Cawthon asked Higgins if Cawthon was losing her job. Higgins allegedly told Cawthon that she was not losing her job and would help cover the full-time receptionist's lunch hours. Tinsley stated that Cawthon was asked if she wanted the full-time position but declined because she could not work full-time hours. On February 5, 2018, the new full-time receptionist began working at the Housing Authority, and Cawthon covered the full-time receptionist's lunch hours.

¶ 8    Meanwhile, in early January 2018, Cawthon alleged that she had informed Higgins that Cawthon had upcoming medical appointments at the Mayo Clinic. Cawthon also emailed Tinsley in early February 2018 to advise her about the upcoming appointments. While Cawthon was out of the office for her appointments at the Mayo Clinic, other employees filled in to cover the full-time receptionist's lunch hours. During this time, the Housing Authority determined that it no longer needed to pay a part-time employee to cover the full-time receptionist's lunch hours.

¶ 9    On April 13, 2018, Tinsley and Higgins met with Cawthon and informed her that her position had been eliminated. Higgins allegedly told Cawthon that she would remain on the payroll in the event the Housing Authority needed Cawthon to work in a temporary

3

capacity. On April 20, 2018, Cawthon sent a letter to Tinsley. In her letter, Cawthon thanked Tinsley and wished the Housing Authority well. Additionally, Cawthon asked Tinsley to consider "calling [Cawthon] back to work" if the Housing Authority "should have the extra funding at a later date."

¶ 10    When interviewed by the Department, Cawthon admitted that she never provided the Housing Authority with documentation of her disabilities. Cawthon stated, however, that the Housing Authority "must have known she had some kind of medical condition" because she had informed the Housing Authority of her doctor appointments. Cawthon stated that the Housing Authority accommodated her by allowing her to work part-time and change the days she worked whenever she had a doctor appointment. Additionally, the Housing Authority had provided Cawthon with a stool to put under her desk for her feet and legs. Cawthon alleged that after she told Higgins about Cawthon's Mayo Clinic appointments, the Housing Authority began looking for a full-time receptionist. Cawthon further stated that she could not work full-time because doing so interfered with her disability benefits.

¶ 11    Higgins stated that she was aware that Cawthon only wanted to work part-time but was not aware that Cawthon had any disabilities because Cawthon never provided the Housing Authority with documentation of her disabilities. Higgins further stated that Cawthon never told the Housing Authority that her desire to work part-time was due to any disability or was an accommodation for any disability.

¶ 12    Tinsley also stated that she was aware that Cawthon only wanted to work part-time but was not aware that Cawthon had any disabilities. Tinsley indicated that there was no

4

accommodation available that would have allowed Cawthon to work as a full-time receptionist. Regarding reassignment to another position, Tinsley stated that the Housing Authority did not have any available part-time positions at the time Cawthon's position was terminated. Tinsley further stated that the Housing Authority does not reassign employees to other positions. Employees must show an interest in a different position and apply for it. Finally, Tinsley reported that Cawthon did not request to be reassigned or apply for any other positions following the elimination of the part-time receptionist position.

¶ 13    On February 13, 2020, the Department dismissed Cawthon's charge of discrimination for lack of substantial evidence. Cawthon subsequently filed a request for review of the dismissal by the Commission. In her request for review, Cawthon asserted that both Tinsley and Higgins knew Cawthon received disability benefits and knew of her disabilities. Specifically, Cawthon alleged that she had told Higgins about Cawthon's disabilities during a meeting they had at Burger King when Higgins first started working for the Housing Authority. Cawthon further alleged that she had filed a grievance against another coworker, "Missy," that was related to medical issues, although "not in that exact wording." Cawthon stated that she had PTSD and began having memory problems because of "bullying from Missy." Cawthon claimed that she told Higgins that Cawthon was going to the Mayo Clinic because she was having memory problems and "Steven-Johson [*sic*] flares." Both the Department and the Housing Authority responded to Cawthon's request for review and asked that the Commission sustain the Department's dismissal of Cawthon's charge of discrimination.

¶ 14    On July 8, 2020, the Commission issued an order sustaining the Department's dismissal of Cawthon's charge of discrimination for lack of substantial evidence. Regarding Cawthon's failure to accommodate claim, the Commission found that Cawthon's claim failed because Cawthon never requested an accommodation for her disabilities. The Commission noted that Cawthon "failed to show that working part-time hours was necessary for adequate job performance." The Commission stated that Cawthon only showed that working part-time hours allowed her to continue receiving disability benefits.

¶ 15    As to Cawthon's claim that the Housing Authority failed to reassign Cawthon because of her disabilities, the Commission determined that Cawthon's claim failed because the Housing Authority did not have any vacant part-time positions to offer Cawthon. Furthermore, the Commission determined that the Housing Authority was not required to "bump" another employee or create a new position to accommodate Cawthon.

¶ 16    Finally, the Commission concluded that Cawthon could not establish a *prima facie* case of disability discrimination because Cawthon did not show that the elimination of the part-time receptionist position was related to her disabilities. The Commission noted that the Housing Authority explained that it was more cost-effective to employ one full-time receptionist rather than paying two part-time employees. The Commission further noted that although Cawthon informed the Housing Authority about her Mayo Clinic appointments in early January, her position was not eliminated until April 13, 2018. The Commission explained that this nearly four-month period suggested that the decision to eliminate Cawthon's position was not related to her disabilities. The Commission further

explained that during this period, the Housing Authority learned that Cawthon's position was unnecessary when other employees filled in for the full-time receptionist's lunch hours. Finally, the Commission found that the Housing Authority harbored no discriminatory animus toward Cawthon because she was offered the full-time receptionist position.

¶ 17    Cawthon petitioned this court for direct administrative review of the Commission's decision. This appeal follows.

¶ 18                                    ANALYSIS

¶ 19    At the outset, we note that Cawthon's brief does not comply with the briefing requirements set forth in Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020). For example, Cawthon's statement of facts fails to reference the appropriate pages of the record and contains improper argument and comments. See Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Additionally, Cawthon's argument section does not contain citations to authority, or the pages of the record on which Cawthon relies. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 20    Although Cawthon is proceeding *pro se* on appeal, she must comply with our supreme court's rules. *Ammar v. Schiller, DuCanto & Fleck, LLP*, 2017 IL App (1st) 162931, ¶ 16. Compliance with the supreme court's rules is mandatory, and we may strike a brief and dismiss an appeal for failure to comply with the rules. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12. Striking an appellate brief, however, "is a harsh sanction and is appropriate only when the violations of procedural rules hinder our review." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 15. Here, the merits of the appeal can

7

be readily ascertained from the record, and we have the benefit of a cogent brief from the respondents. Thus, we will address the merits of the appeal. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001).

¶ 21 The Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2018)) prohibits discrimination against a person based on disability. 775 ILCS 5/1-102(A) (West 2018). It is a civil rights violation for any employer to "act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination." 775 ILCS 5/2-102(A) (West 2018).

¶ 22 Upon the filing of a discrimination charge, the Department must investigate the allegations to determine whether the allegations set forth in the charge are supported by substantial evidence. 775 ILCS 5/7A-102(C)(1) (West 2018). "Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2018). If the Department determines that there is no substantial evidence to support the allegations, the Department must dismiss the charge. 775 ILCS 5/7A-102(D)(3) (West 2018). The complainant may then seek review of the dismissal with the Commission. 775 ILCS 5/7A-102(D)(3) (West 2018). "When a request for review is properly filed, the Commission may consider the Department's report, any argument and supplemental evidence timely submitted, and the results of any additional investigation conducted by the Department in response to the request." 775 ILCS

8

5/8-103(B) (West 2018). If the Commission sustains the dismissal, the complainant may seek review in the appellate court. 775 ILCS 5/8-111(B)(1) (West 2018).

¶ 23 The appellate court reviews the final order of the Commission, not the Department's decision. *Marinelli v. Human Rights Comm'n*, 262 Ill. App. 3d 247, 253 (1994). The Commission's findings of fact "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-111(B)(2) (West 2018). We review the Commission's decision for an abuse of discretion. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. Under this standard, we will not disturb the Commission's decision unless it is arbitrary or capricious. *Young*, 2012 IL App (1st) 112204, ¶ 33. A decision is arbitrary or capricious if it contravenes the legislature's intent, fails to consider a crucial aspect of the problem, or offers an explanation so implausible that it cannot be regarded as an exercise of the agency's expertise. *Young*, 2012 IL App (1st) 112204, ¶ 33. The appellate court may not reweigh the evidence or substitute its judgment for that of the Commission. *Young*, 2012 IL App (1st) 112204, ¶ 33. An abuse of discretion will be found where no reasonable person would agree with the decision of the Commission. *Young*, 2012 IL App (1st) 112204, ¶ 33.

¶ 24 In analyzing cases under the Act, Illinois courts employ the approach adopted by the Illinois Supreme Court in *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178-79 (1989). Under this approach, the complainant has the initial burden of proving a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Zaderaka*, 131 Ill. 2d at 178-79. If the complainant establishes a *prima facie* case, a rebuttable presumption arises that the employer unlawfully discriminated against the complainant.

9

*Zaderaka*, 131 Ill. 2d at 179. If the employer articulates a legitimate, nondiscriminatory reason for its decision, the burden shifts back to the complainant to prove that the employer's reason was a pretext of unlawful discrimination. *Zaderaka*, 131 Ill. 2d at 179. To establish a *prima facie* case of disability discrimination under the Act, Cawthon must prove: (1) she was disabled within the definition of the Act; (2) her disability was unrelated to her ability to perform the functions of the job she was hired to perform; and (3) an adverse job action was taken against her related to her disability. *Kreczko v. Triangle Package Machinery Co.*, 2016 IL App (1st) 151762, ¶ 37.

¶ 25    Here, the Commission found that Cawthon failed to prove the third requirement of a *prima facie* case—that eliminating Cawthon's part-time receptionist position was related to her disabilities. The record shows that the Housing Authority determined that hiring one full-time employee, rather than employing two part-time employees, was more cost-effective. Furthermore, the Commission noted that nearly four months elapsed between Cawthon advising the Housing Authority of her appointments at the Mayo Clinic and Cawthon's termination. The Commission found that this period of time suggested that the decision to eliminate the part-time receptionist position was not related to Cawthon's disabilities. The Commission explained that during this period, other staff members covered the full-time receptionist's lunch hours, and it became apparent to the Housing Authority that Cawthon's position was unnecessary. Finally, the Commission found that the Housing Authority harbored no discriminatory animus toward Cawthon because the Housing Authority offered Cawthon the full-time receptionist position. Accordingly, the Commission properly found that Cawthon failed to establish a *prima facie* case because

10

Cawthon failed to prove that the elimination of the part-time receptionist position was related to her disabilities.

¶ 26    Likewise, the Commission properly found that Cawthon did not prove the Housing Authority failed to accommodate her or reassign her. "Employers *** must make reasonable accommodation of the known physical or mental limitations of otherwise qualified disabled applicants or employees, unless the employer *** can demonstrate that accommodation would be prohibitively expensive or would unduly disrupt the ordinary conduct of business." 56 Ill. Adm. Code 2500.40(a) (2009). It is the employee's burden to assert the duty to accommodate; show that an accommodation was, in fact, requested; and demonstrate that accommodation was necessary for adequate job performance. *Owens v. Department of Human Rights*, 356 Ill. App. 3d 46, 53 (2005). The duty to accommodate only requires an employer to accommodate a disabled employee in the employee's present position. *Fitzpatrick v. Human Rights Comm'n*, 267 Ill. App. 3d 386, 392 (1994).

¶ 27    Here, the Commission found, and the record shows, that Cawthon did not request an accommodation for her disabilities. Furthermore, Cawthon failed to show that working part-time was necessary for her to adequately perform her job. As the Commission noted, the record only shows that working part-time allowed Cawthon to continue receiving disability benefits. Finally, the record shows that when Cawthon was terminated, the Housing Authority had no vacant part-time positions, and Cawthon never requested to be reassigned or applied for any other position. Thus, Cawthon failed to prove that the Housing Authority failed to accommodate her disabilities or reassign her.

11

¶ 28    We note that Cawthon argues on appeal that a thorough investigation, particularly into the Housing Authority's alleged "lack of funding," was not completed. But the record does not show that Cawthon raised this issue with the Commission or provided the Commission with supplemental evidence showing that the Department's investigation was lacking. Consequently, Cawthon has forfeited review of this claim. See, *e.g.*, *Demesa v. Adams*, 2013 IL App (1st) 122608, ¶ 52 (issue not raised before the administrative agency was forfeited).

¶ 29    Accordingly, we affirm the final order of the Commission sustaining the Department's dismissal of Cawthon's charge of disability discrimination for lack of substantial evidence.

¶ 30    Affirmed.