KAREN M. STONE, Petitioner, v. THE DEPARTMENT OF HUMAN RIGHTS *et al.*, Respondents.

Fourth District   No. 4—98—0054

Argued August 12, 1998.—Opinion filed September 28, 1998.

James P. Baker (argued), of Law Offices of James P. Baker, of Springfield, for petitioner.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Patrick W. Carlson (argued), Assistant Attorney General, of counsel), for respondents Human Rights Commission and Department of Human Rights.

John M. Myers (argued), of Rabin, Myers & Hanken, P.C., of Springfield, for respondent Village of Riverton.

JUSTICE KNECHT delivered the opinion of the court:

Petitioner, Karen Stone, brings this direct review (155 Ill. 2d R. 335) of an order of the Illinois Human Rights Commission (Commission), sustaining the Illinois Department of Human Rights' (Department) dismissal of petitioner's charges against the Village of Riverton (Village) of gender discrimination in employment and of retaliation resulting in a constructive discharge from her employment. 775 ILCS 5/8—111(A)(1) (West 1996).

The issues are whether (1) the Department and the Commission used the correct legal standard for determining whether petitioner offered sufficient substantial evidence to justify the issuance of a complaint; and (2) whether the decision of the Commission to dismiss her charges constituted an abuse of discretion.

Petitioner's charges of discrimination, filed September 7, 1995, alleged she was hired in August 1993 by the Village as a part-time police

officer and applied for two openings for full-time police officers in 1995 but was not hired in favor of male candidates both times. She later added an amendment to her charges on December 5, 1996, alleging the Village improperly retaliated against her resulting in a constructive discharge from her job on September 6, 1996.

In support of her charges, petitioner stated she was doing a good job in her position as a part-time police officer and she was qualified for the full-time position. She claims the Village treated female applicants differently from male applicants. Her qualifications included 10 years' employment with the Sangamon County sheriff's department as a dispatcher, two years' employment as a part-time police officer with the Village and service with the Sangamon County sheriff's auxiliary patrol for five years. Petitioner did not have any training with the Police Training Institute (PTI), but she did have other training, including seven years with the United States Air Force and the Illinois Air National Guard in munitions work, canine training for 14 weeks, and various training programs offered by the Village and the Sangamon County sheriff.

The first full-time position with the Village for which petitioner applied was given to Thomas Maybury. Maybury's qualifications consisted of two years in his part-time position with the Village, five years with the auxiliary sheriff's patrol with the Sangamon County sheriff and five years as a corrections officer with the Sangamon County sheriff. His training included 200 hours of PTI training in the corrections division at the University of Illinois. Petitioner states in her affidavit filed with the Commission upon review of the Department's decision that Maybury's PTI training was in the specialized area of correctional officer training and is not creditable toward general PTI training. She admits in the same affidavit she and Maybury have comparable firearms training.

The notice the Village provided of the opening for the full-time police officer position stated the position was for federally funded "Community Oriented Policing." It did not state PTI training of any kind was required for the position. However, the Village took into account the PTI hours Maybury had accumulated that petitioner did not have. Marti Dove, a member of the administrative committee for the Village which interviewed the job applicants, stated PTI training is an issue because it is a statutory requirement officers meet the requirements set out by the Police Training Board. Dove and other members of the interview committee stated petitioner did not interview well but, rather, tried to convince the committee of the value of canine policing that she could offer the Village and tried to sell her dog rather than herself in her interview. Petitioner states in her affidavit she spoke

only twice about her dog and once was in response to a question from the committee.

Petitioner states Todd Williams, a member of the interview committee, asked her if she felt she could get along with the men in the police force as it was all male and asked her if she could handle the job because she was a woman and also small in stature. Williams did not recall making any reference to petitioner being a small woman but did state he asked if she were aware there were no other female officers on the force.

The Department found in its report petitioner and Maybury were equally qualified for the job except for Maybury's 200 hours of PTI training. Further, the Department determined Maybury interviewed better and petitioner did not show the Village's responses were pretext. The Commission found the Village asked all applicants if they had PTI training, which the Village contended was required by statute, and Maybury, unlike petitioner, had this training. The record does not establish whether the kind of PTI training Maybury received was that required by statute. The Commission went on to find the Department's investigation did not reveal the Village's stated reason for hiring Maybury instead of petitioner was a pretext for sex discrimination.

The second full-time position for which petitioner applied was given to Daniel Parrish. Petitioner alleges she was doing a good job in her part-time position and was qualified for the full-time position. Petitioner again alleges the Village treated male officers differently from female officers. Petitioner felt she and Parrish were equally qualified. Parrish also was a part-time officer with the Village and he had three years' seniority on petitioner. His full-time job was with the Sangamon County sheriff's department as a court security officer, a position he had held for six years. He also had experience as a corrections supervisor.

The interview committee felt Parrish was better qualified because his experience with the court system and court security was "hands on" while petitioner was only a dispatcher; he lived in the Village, which petitioner did not, and was active in the community activities; he had worked for the Village three years longer than petitioner; petitioner's demeanor during her interview was poor and she again made too many references to how her dog could help the community.

The Department's findings were that both petitioner and Parrish were qualified for the position but the committee felt Parrish was better qualified based on his experience and visibility and rapport in the community; Parrish interviewed better than petitioner; and petitioner did not show the Village's reasons were pretext.

The Commission found petitioner alleged Parrish was less quali-

fied than she but the Village contended Parrish was more qualified because he had more experience in the court system. Further, the evidence did not establish the Village's stated reason for hiring Parrish was a pretext for sex discrimination.

Petitioner's final charge is the Village constructively discharged her by engaging in retaliatory actions after she filed her initial discrimination charges. Petitioner asserts after she filed her discrimination charges she was scheduled to work on days she said she was unable to work and then she was required to get substitutes and her hours worked thus decreased. She was scheduled to work midnight shifts more frequently, which interfered with her daytime job. The police chief was a "DARE" officer and was gone during the day shift. He asked other officers to cover for him but never asked petitioner. The number of total hours petitioner was assigned decreased. The chief started to return her written police reports to her because they were not fully completed when previously she had been praised for her work. Petitioner claims her reports were no different than before she filed her charges. Petitioner was told she could no longer take her lunch break at the end of her shift even though she had always obtained permission from the chief to do so. The Village had, prior to filing her charges, allowed petitioner to respond to requests for canine calls from other jurisdictions and provided monetary assistance toward the upkeep of her dog, but the policy changed drastically after she filed her charges to limit her ability to respond to requests for canine calls and the monetary assistance was also lowered.

Finally, the Village told petitioner part-time positions would be eliminated because the Village was moving to a full-time police department. Petitioner stated she resigned because she believed her position was going to be eliminated and, since she needed other part-time work, she took a job elsewhere. These are the reasons given in the letter of resignation. However, petitioner also stated she felt she had to resign because of the stress the Village's retaliatory acts were causing in her life and she would not have taken another position except she was subjected to a continuing reduction in hours and assignments that were incompatible with her full-time job. Petitioner states in her affidavit filed with the Commission on review that she has discovered, following her resignation, the Village has not eliminated part-time police officers and filled her position with a male.

In petitioner's letter of resignation she stated she was resigning because of uncertainty as to whose part-time position would be eliminated and she had obtained employment elsewhere. The Village and the Department point to the letter as evidence petitioner did not resign due to the adverse actions she alleges were taken by the Vil-

lage. They point out her letter admits she was unsure if she would be affected by job eliminations.

The Village and the Department maintain the remaining reasons petitioner states for resigning would not have compelled a reasonable person to resign. The Department points out petitioner admits the conflict in shift scheduling may have been a mistake. Reports were sent back to other officers as well as complainant. The police department instituted an office-wide policy of precluding employees from taking their lunch hour at the end of their shift because there would be no protection for the Village. The changes in the canine policies were instituted for liability purposes because petitioner was in the uniform of a Village police officer when responding in other jurisdictions. The changes in the reimbursement of expenses for petitioner's dog were a cost-saving measure.

The Department found petitioner as well as other officers had reports returned because they lacked detail in information required for the computer package; all officers received a memo stating no one could take lunch at the end of a shift because the Village would be unprotected; petitioner's shift requests could not always be honored because of the number of people in the rotation and because vacation time had to be covered; petitioner admitted it might have been a mistake when she was scheduled to work on days that overlapped her shifts at the sheriff's department; restrictions on canine calls were due to liability concerns; petitioner stated she submitted her letter of resignation because she had been told her position would be eliminated; and petitioner did not show the Village's reasons for its actions were pretext.

The Commission found the evidence did not establish the Village's conduct amounted to constructive discharge or that the actions that petitioner alleged amounted to constructive discharge were the result of her filing a charge with the Department. The Commission further found petitioner's affidavit filed with her request for review provided more details of her specific allegations of retaliation but she did not provide any reason for not providing these details during the Department's investigation.

■ In analyzing employment discrimination actions brought under the Illinois Human Rights Act (Act) (775 ILCS 5/1—101 *et seq.* (West 1996)), a three-part analysis first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 36 L. Ed. 2d 668, 677-79, 93 S. Ct. 1817, 1824-25 (1973), is used.

> "First, plaintiff must establish by a preponderance of the evidence a *prima facie* case of unlawful discrimination. If a *prima facie* case is established, a rebuttable presumption arises that the employer

unlawfully discriminated against plaintiff. Second, to rebut the presumption, the employer must articulate, not prove [citation], a legitimate, nondiscriminatory reason for its decision.

Finally, if the employer carries its burden of production, the presumption of unlawful discrimination falls and plaintiff must then prove by a preponderance of the evidence that the employer's articulated reason was not its true reason, but was instead a pretext for unlawful discrimination. This merges with plaintiff's ultimate burden of persuading the trier of fact that the employer unlawfully discriminated against plaintiff. [Citation.] This ultimate burden remains at all times with plaintiff. [Citation.]" *Zaderaka v. Human Rights Comm'n*, 131 Ill. 2d 172, 178-79, 545 N.E.2d 684, 687 (1989).

Petitioner argues that, based on *Whipple v. Department of Rehabilitation Services*, 269 Ill. App. 3d 554, 556-57, 646 N.E.2d 275, 277 (1995), the Department and the Commission should not have considered the second and third prongs of the analysis. In *Whipple*, this court concluded a decision to dismiss a charge after the Department investigation must be based on the insufficiency of the *prima facie* case alone. According to *Whipple*, going into the second and third prongs of the *Zaderaka* analysis would inherently bring into play a balancing of evidence. *Whipple*, 269 Ill. App. 3d at 556-57, 646 N.E.2d at 277.

A conflict in authority has developed on whether only the first prong of the analysis can be considered at the investigative stage. In *Alcequeire v. Human Rights Comm'n*, 292 Ill. App. 3d 515, 520, 685 N.E.2d 974, 977 (1997), the court disagreed with *Whipple* and said the consideration of a dismissal of a charge for lack of substantial evidence need not be restricted to the *prima facie* prong but may also include an analysis of whether the employer has articulated a legitimate reason for the actions taken and the petitioner has not shown the reasons are pretext.

■ We have reconsidered the *Whipple* decision and conclude it does not correctly state the law. See *Webb v. Lustig*, 298 Ill. App. 3d 695 (1998). If the Department and the Commission cannot consider the second and third prongs of the analysis, this would unduly restrict their investigative authority. In determining whether a charge filed by a complainant should go forward, the Director of the Department is charged with determining whether there is "substantial evidence that the alleged civil rights violation has been committed." 775 ILCS 5/7A—102(D)(2) (West 1996).

In making such a determination, the Department and Commission should be able to consider at the initial stages whether a legitimate reason for an employer's actions exists because the petitioner's *prima*

*facie* case sets up only a rebuttable presumption discrimination occurred. As noted in *Alcequeire*, the Commission's limited resources would then be used only for those cases· where there is substantial evidence the employer's stated reasons for its discriminatory actions are pretext.

Further, we note the section of the Act dealing with the determination of whether there has been substantial evidence an alleged civil rights violation has occurred has been amended for all causes of action filed after January 1, 1996, to clarify that this determination includes not only findings of fact and conclusions but also "the reasons for the determinations on all material issues and questions of credibility." 775 ILCS 5/7A—102(D)(2), (H) (West 1996). Thus, there is no longer a need to restrict a consideration of substantial evidence to the *prima facie* to avoid a balancing of evidence. The statute expects the investigation phase to involve such a balancing and to determine whether substantial evidence exists as to each of three prongs of the analysis.

■ Under the Act as it existed for causes of action filed before January 1, 1996, after the Department has conducted its investigation of a complaint, the Director of the Department reviews the investigative report to determine whether there is substantial evidence the alleged civil rights violation occurred. 775 ILCS 5/7A—102(D)(2) (West 1994). If the Director determines there is no substantial evidence, the complaint is dismissed and the complainant may then seek review of the Department's dismissal with the Commission. 775 ILCS 5/7A—102(D)(2)(a) (West 1994). On review, the Commission may consider the Department's report, any argument and supplemental evidence submitted, the results of any additional investigation conducted by the Department in response to the request for review and, in its discretion, may hold a hearing into the factual basis of the issues presented. 775 ILCS 5/8—103(B) (West 1994). Final orders of the Commission are subject to review by the appellate court. 775 ILCS 5/8—111(A)(1) (West 1994). While any findings of fact by the Commission may only be reversed if they are contrary to the manifest weight of the evidence (775 ILCS 5/8—111(A)(2) (West 1994)), the proper standard of review of the ultimate decision of the Commission to dismiss a complaint for lack of substantial evidence is whether the order constituted an abuse of discretion or was arbitrary and capricious. *Alcequeire*, 292 Ill. App. 3d at 519-20, 685 N.E.2d at 976; *Whipple*, 269 Ill. App. 3d at 556, 646 N.E.2d at 277; *Peck v. Department of Human Rights*, 234 Ill. App. 3d 334, 337, 600 N.E.2d 79, 81 (1992).

■ Substantial evidence means more than a mere scintilla but less than a preponderance of the evidence. *Alcequeire*, 292 Ill. App. 3d at

519, 685 N.E.2d at 976; *Metro Utility v. Illinois Commerce Comm'n*, 193 Ill. App. 3d 178, 184, 549 N.E.2d 1327, 1330-31 (1990). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Sanders v. United Parcel Service*, 142 Ill. App. 3d 362, 364-65, 491 N.E.2d 1314, 1317 (1986).

■ To establish a *prima facie* case of employment discrimination, a complainant must show (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected despite her qualifications; and (4) after she was rejected, the position remained open and the employer sought other applicants from persons of complainant's qualifications. See *McDonnell Douglas*, 411 U.S. at 802, 36 L. Ed. 2d at 677, 93 S. Ct. at 1824; *Schoneberg v. Grundy County Special Education Cooperative*, 67 Ill. App. 3d 899, 903, 385 N.E.2d 351, 356 (1979). In this case, petitioner's first two charges involved this standard of proof.

■ In the case of the first charge, Maybury's PTI training makes him more qualified for the position than petitioner notwithstanding her statements in her affidavit Maybury's PTI training was not "real." Those statements are not substantiated in any way. Further, petitioner did not interview well, spending too much time talking about her dog. Petitioner failed to show the Village's reasons for hiring Maybury, PTI training and better interview, were pretext.

As for the second charge involving the hiring of Parrish instead of petitioner, the evidence indicated the qualifications of petitioner and Parrish were equal. An employer need not hire an applicant just because she is in a protected class if she is only equally or less qualified than an applicant who is hired. The comments of the Supreme Court discussing Title VII would seem to apply to complaints brought under the Act also:

> "Title VII, however, does not demand that an employer give preferential treatment to minorities or women. [Citations.] The statute was not intended to 'diminish traditional management prerogatives.' [*United Steelworkers of America v. Weber*, 443 U.S. 193, 207, 61 L. Ed. 2d 480, 491, 99 S. Ct. 2721, 2729 (1979)]." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 259, 67 L. Ed. 2d 207, 219, 101 S. Ct. 1089, 1096 (1981).

When qualifications are equal, an employer is not obligated to accord a preference to a minority or female applicant over a white male applicant. "Rather, the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Burdine*, 450 U.S. at 259, 67 L. Ed. 2d at 219, 101 S. Ct. at 1097.

The Village's hiring committee believed Parrish's experience was more "hands on" and he had visibility in the community because he lived there and was active in community events. There was also a finding Parrish interviewed better than petitioner, who still talked about her dog. Petitioner was not able to show the Village's reasons for hiring Parrish, community visibility, more experience in the court system and a better interview, were pretext for sex discrimination.

■ Finally, to show a *prima facie* case of retaliation a petitioner must show the following: (1) she engaged in a protected activity; (2) the employer committed an adverse act against her; and (3) a causal connection existed between the protected activity and the adverse act. *Carter Coal Co. v. Human Rights Comm'n*, 261 Ill. App. 3d 1, 7, 633 N.E.2d 202, 207 (1994).

■ A constructive discharge occurs when an employee's working conditions are made so intolerable the employee, acting as a reasonable person, is compelled to resign. The focus in such a case is on a reasonable person's reaction to the petitioner's situation. *Motley v. Human Rights Comm'n*, 263 Ill. App. 3d 367, 373, 636 N.E.2d 100, 104 (1994).

■ The evidence did not support a *prima facie* case of retaliation because most of the actions petitioner viewed as adverse were not committed just against petitioner but applied to all officers. Thus, the fact they occurred shortly after petitioner filed her charges with the Department does not show a causal link between the charges and the actions. Further, the actions taken were not of such magnitude a reasonable person would resign a position. The Village's reasons for its actions were all lawful and legitimate. There is no evidence supporting a finding they were a pretext.

The Commission's decision dismissing each of the three charges was not an abuse of discretion nor was it arbitrary and capricious.

The decision of the Commission is affirmed.

Affirmed.

COOK and GREEN, JJ., concur.