2020 IL App (1st) 200288-U

SECOND DIVISION
November 10, 2020

No. 1-20-0288

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| TRACEY J. ELLIS, | ) | Petition for Direct Administrative |
| | ) | Review of a Decision of the Illinois |
| Petitioner-Appellant, | ) | Human Rights Commission. |
| | ) | |
| v. | ) | |
| | ) | No. 2019 CF 0834 |
| ILLINOIS HUMAN RIGHTS COMMISSION, | ) | |
| ILLINOIS DEPARTMENT OF HUMAN | ) | |
| RIGHTS, and BEACON HILL STAFFING | ) | |
| GROUP, LLC, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Pucinski and Cobbs concurred in the judgment.

**ORDER**

*HELD*: The Illinois Human Rights Commission did not abuse its discretion by sustaining the dismissal of petitioner's charge of unlawful employment discrimination for lack of substantial evidence.

¶ 1        Petitioner-appellant Tracey J. Ellis (petitioner) appeals *pro se* from a final order entered by respondent-appellee the Illinois Human Rights Commission (Commission) sustaining respondent-appellee the Illinois Department of Human Rights' (Department) dismissal of her charge of unlawful employment discrimination against respondent-appellee Beacon Hill Staffing Group, LLC (Beacon Hill). Petitioner alleged that Beacon Hill unlawfully refused to hire her for employ based on her race in violation of section 5-102(A) of the Illinois Human Rights Act (Act) (775 ILCS 5/5-102(A) (West 2016)). The Department dismissed her charge for lack of substantial evidence. Petitioner sought review from the Commission, which sustained the Department's decision. She now appeals, contending that the Commission abused its discretion in sustaining the dismissal of her cause. She asks that we reverse the order entered by the Commission and remand "[t]o award [her] a protected enforceable claim" in the amount of at least $50,000 "plus photocopying fees." For the following reasons, we affirm.

¶ 2                                BACKGROUND

¶ 3        Beacon Hill is a staffing and executive search firm that matches qualified applicants with client-employers looking to hire new employees. At the time of the incidents described herein, Katherine Santa-Maria was a senior staffing consultant for Beacon Hill and Kimberly Abhold was a division manager for Beacon Hill.

¶ 4        In December 2018, petitioner filed an employment discrimination charge with the Department alleging that Beacon Hill unlawfully refused to hire her because of her race, which she described as "black." In her petition, she raised two counts. In her first count, she averred that in October 2018, she applied online, and was qualified, for a call center position with Beacon Hill for one of its clients and submitted her resume. According to petitioner,

2

she received a telephone call from Santa-Maria (whom petitioner refers to as non-black) as an "interview." Petitioner stated that during this interview, Santa-Maria told her that the client was looking for an employee with only one year of call center customer service experience, that Santa-Maria immediately offered her the position, and that Santa-Maria told her she would inform petitioner within the week regarding her start date. Petitioner further averred that Santa-Maria did not call her back, did not place her, and never provided her with a reason for employment denial. Petitioner insisted this was because Santa-Maria was aware of her race prior to the interview since she had filled out an ethnicity questionnaire, and petitioner described that, while she admittedly had no knowledge if similarly situated non-black employees were offered the same position, she nonetheless felt she had been mistreated and that she was the only black minority that Santa-Maria had refused to hire.

¶ 5    In her second count of employment discrimination, petitioner averred that, subsequent to this, in November 2018, she again applied, and was qualified, for a "business dialer/market research" position for a Beacon Hill client. She insisted she did so because Santa-Maria personally informed her about it first and that Santa-Maria told her she would forward her (petitioner's) information to Abhold (whom petitioner refers to as white), who would contact her. Petitioner recounted that sometime later, she received a call from Abhold about an unrelated position and when she inquired about the market research position, Abhold told her that client wanted a candidate with current "inbound/outbound experience" and that she was not being hired for it. Again, petitioner insisted that similarly situated non-black job seekers were not treated in this manner by Beacon Hill and presumably a lesser-qualified non-black individual was hired instead of her, even though she admitted she had no knowledge of this and no one at Beacon Hill had ever made any reference to her race.

¶ 6        Based on her petition, the Department conducted an investigation, interviewed Santa-Maria and Abhold, and obtained the following evidence from Beacon Hill. With respect to the first count, Santa-Maria stated that, while petitioner's application demonstrated she was interested in customer service employment, her resume indicated a significant amount of time had passed since she last worked in a customer service position. Santa-Maria described that within the work history petitioner provided on her application and her resume, while she had been regularly employed since September 2000, her most recent work in the specific field of customer service was some 13 years before applying with Beacon Hill. After July 2005, petitioner describe she was a contractor, an independent contractor, and a sales contractor, but did not work in customer service again. Accordingly, and knowing that Beacon Hill's client did not want to hire anyone with gaps in their resumes, Santa-Maria recounted that she interviewed petitioner over the phone on October 1, 2018 for a business dialer position instead, as this was the only position matching petitioner's skills available within Beacon Hill at that time. Santa-Maria specifically explained to petitioner during the interview that, although she knew petitioner had indicated she was interested in customer service employment, petitioner would not be a good fit for the client since that client did not want to hire anyone with such a lengthy gap in her last customer service employment experience. Likewise, Abhold stated that she, too, reviewed petitioner's resume and it clearly indicated that, while she had customer service experience in the past, she had not worked in that capacity since 2005, 13 years earlier. Abhold further stated that petitioner was not chosen for this customer service position because the client did not want to employ anyone with gaps in their resumes, and that Beacon Hill did not discriminate against her

because of her race.  Abhold also confirmed that neither Beacon Hill nor anyone who worked there ever offered petitioner a position at any time.

¶ 7    With respect to petitioner's second count of employment discrimination, Santa-Maria stated that in mid-November 2018, petitioner left her a voicemail message in which petitioner announced that she preferred to work with men and to be managed and/or trained by a male. In the message, petitioner told Santa-Maria that:

> "it's not against the law to tell you what my preference in working would be, so (laugh), I prefer um, the man to work with, 'cause that's who I prefer, you know and I, I should hope that I will be, be assigned to him.  Okay?"

Santa-Maria returned petitioner's call and left her a voicemail message stating that Beacon Hill could not guarantee who would be training her if she were hired and that Beacon Hill would not entertain any discriminatory request from an applicant such as a request not to work with people of a particular race, sex, age or other characteristic.  Santa-Maria described that petitioner's request was off-putting, unprofessional and discriminatory.  Santa-Maria further stated that the next day, petitioner left her another voicemail message, this time stating that she was going to send an email to Beacon Hill's corporate office "just discussing that this could be a possible pending assignment" and that she was anticipating a December 4, 2018 start date.  Santa Maria described that petitioner actually sent such an email soon thereafter, because the corporate office immediately forwarded it to her (Santa-Maria).  In her email to corporate, petitioner attributed several comments to Santa-Maria that Santa-Maria never made, such as offering her a position (one completely different than what petitioner had even applied for) and notifying her of a start date.  In the email, petitioner told the corporate office:

"I am just confirming my assignment for 12/4/18 as a Project Surveyor at a client in the downtown Chicago, IL location as discussed with Ms. Katie Santa-Maria Recruiter [*sic*] at your branch office *** via phone yesterday on 11/15/18."

Petitioner also related in her email to corporate that she preferred "to be assigned to the male in charge of the training and the department manager for working with, [*sic*] ***." Once it was clear to Santa-Maria that petitioner was making false representations, she advised Abhold that petitioner should not be considered for any employment or placement via Beacon Hill. Santa-Maria forwarded petitioner's email to Abhold and informed Abhold she would not submit petitioner's application to Beacon Hill's clients. Finally, Santa-Maria described that on November 19, 2018, petitioner sent her an email directly, again falsely attributing statements to her, referring to a "pending assignment" with a "12/4/18" start date, asserting that she (petitioner) had recorded their telephone communications without Santa-Maria's consent, and declaring that she (petitioner) was "going to report you again" to corporate headquarters "to ensure that [petitioner] will be respectfully served."

¶ 8    In corroboration, Abhold stated with respect to the November 2018 incidents that she spoke with petitioner at that time and explained that she would be reviewing resumes before any would be submitted to Beacon Hill clients. In response to petitioner's request to work only with male supervisors and trainers, she told petitioner that neither Beacon Hill nor its clients discriminate in that manner and that there was no guarantee as to who would be the onsite manager or trainer. Later in November, following petitioner's communications with Santa-Maria and corporate, Abhold informed petitioner that after reviewing her resume and their clients' expectations, Beacon Hill would not be presenting her resume to any clients and that she was just not a good fit. Abhold also confirmed that, while petitioner has insisted

throughout this time that she was seeking a market research position as advertised by Beacon Hill, Beacon Hill does not recruit for market research positions, no such position was ever open within Beacon Hill or any of its clients, and no one at Beacon Hill ever told petitioner she was being considered for a market research position.

¶ 9        Beacon Hill provided the Department with several exhibits.  It submitted its Equal Employment Opportunity/Affirmative Action Policy Statement, which states that it "does not discriminate on the basis of race, sex, religion, color, national origin, age, sexual orientation, disability, military service, ancestry or genetic information or any other classification protected by applicable law."  The policy further states that "all terms and conditions of employment *** are administered in a non-discriminatory manner."  Next, Beacon Hill submitted petitioner's signed application, which contains a provision stating that "I [the applicant] understand that nothing contained in this application for employment or in the granting of an interview is intended to create an employment contract ***.  No promises regarding employment have been made to me and I understand that no such promise is binding unless made in writing."  Beacon Hill also submitted petitioner's resume, the forwarded emails containing petitioner's initial email to corporate insisting that Santa-Maria offered her a position with a start date, Santa-Maria's email to Abhold, and petitioner's direct email to Santa-Maria stating she had recorded her calls and would be reporting her again to corporate headquarters.  Finally, Beacon Hill presented business records demonstrating that, within the year of petitioner's complaints, from January 1, 2018, through January 1, 2019, it placed 76 people at the same client for which petitioner sought to work; of those 76 placed, 55 of them, or 72%, were black.

¶ 10    Upon the close of its investigation, the Department concluded there was no evidence that Beacon Hill failed to hire petitioner because of her race. With respect to petitioner's first count, it noted that she failed to establish she was qualified for the position she sought with Beacon Hill's client and she could not name any similarly situated non-black applicants who were equally or less qualified and who were hired or placed by Beacon Hill with that client (or any other, for that matter). The Department pointed to petitioner's resume, which clearly reflected that she had not worked in a customer service position for over 13 years before applying for the instant one. It also detailed that petitioner admitted during the investigation that she had no knowledge if similarly situated non-black employees were offered the position and that no one at Beacon Hill, including Santa-Maria and Abhold, made any reference, negative or positive, to her race at any time. From this, the Department concluded that petitioner's complaint was based solely on mere speculation that her race was the reason she was not placed in October 2018, and that Beacon Hill's employment placement records clearly "negate a race-based animus." Accordingly, the Department found a lack of substantial evidence of race-based discrimination.

¶ 11    Similarly, with respect to petitioner's second count, the Department noted that she did not apply for (and Beacon Hill was not hiring for) a market research position, she was not denied this nonexistent position, and she could not name any similarly situated non-black applicants who were equally or less qualified who were selected for a market research position during that time. The Department pointed to petitioner's demand that she work only with males, which it found tantamount to discrimination and, thus, was, in and of itself, a sufficient basis for Beacon Hill to reject her for hire. The Department additionally noted petitioner's threats regarding her illegal recordings of Santa-Maria's phone conversations with her, which

occurred before Beacon Hill chose not to hire her. And, the Department cited Beacon Hill's employment placement records, which it found, again, clearly "negate a race-based animus." Accordingly, the Department found a lack of substantial evidence of race-based discrimination as to the second count as well, and dismissed her complaint in full.

¶ 12     Petitioner filed a request for review of the Department's decision with the Commission, arguing that the Department's "findings [were] completely false." She demanded remand of her "wrongfully dismissed" charge and raised allegations that there was "direct evidence of racism" against her by Beacon Hill. Petitioner insisted that her "resume did not have any employment gaps to affect *** hiring decisions," and that if this were true, she would not have been contacted by Santa-Maria for an interview. She alleged that Santa-Maria, Abhold and Beacon Hill were "trying to discredit her good work ethics, by lying about gaps for 13 years *** [and] her proven custome[r] service skills" and that her "job placement needs were seriously disrespected, as a qualified black female candidate." Petitioner then went on to attribute several comments to Santa-Maria, including that Santa-Maria contacted her in November 2018 about a market research position, told her she had the right credentials to be hired, and that her lies and "false allegations," along with those of Abhold, were used "as a basis for oppressing her." Finally, petitioner insisted that she "has every right" to request to work with men, "seeing how jealous the white women were towards [her] proven customer service and sales background," and declared that "the unprofessional and racist white female service [she] had received" from Beacon Hill showed its employees, including its "upper management *** [CEO] Andrew Wang, foreign white asian male," "are very racist." Petitioner demanded that the Commission award her "at least $50,000.00 in relief for [Beacon Hill] using racially oppressive tactics against her race, black, as a qualified and

successful american candidate, that white respondents had shown a reckless indifference to, and therefore, is liable for violating her employment right."

¶ 13    The Department responded that its investigation showed petitioner was not well-qualified for the position she applied for in October 2018, that Beacon Hill was not hiring for the position she applied for in November 2018, and that ultimately, she was not well-suited for placement because she only wanted to work for males.  The Department recounted the evidence presented regarding both counts and, after discussing the standards and burdens involved in these complaints, it noted that petitioner readily admitted that no one at Beacon Hill ever said anything about her race and that she did not know of a non-black job applicant who was treated more favorably under similar circumstances.  Thus, the Department pointed out, there was no substantial evidence of race discrimination and petitioner's claims could not stand.

¶ 14    Petitioner filed a reply, asking the Commission to reject the Department's response, arguing, again, that Beacon Hill had denied her employment "as a qualified minority, based on her presence and professional demeanor."  She insisted that the Department's findings were "wrong, and based on false allegations," with "direct evidence of race discrimination *** already proven in the fact finding conference" in contravention of the Act.

¶ 15    After discussing the required elements for an employment discrimination charge and the evidence presented herein, the Commission issued its final administrative decision finding that the Department properly dismissed petitioner's claim for lack of substantial evidence. The Commission noted that, even assuming petitioner presented a *prima facie* case for either count, Beacon Hill proffered legitimate reasons for failing to hire her, namely, because she had not held a customer service position for 13 years (first count) and because she

10

unprofessionally and discriminatorily requested to work only with males, which she never denied. Accordingly, and because petitioner could not present any evidence to show that these reasons were pretextual, the Commission concluded that petitioner did not present any substantial evidence to show that the Department's dismissal of her charge was not in accordance with the Act.

¶ 16                                                    ANALYSIS

¶ 17        As a threshold matter, we note that compliance with Illinois Supreme Court Rule (Rule) 341(h) (eff. May 25, 2018) is mandatory, and a party's status as a *pro se* litigant does not relieve her of her noncompliance with appellate practice rules. See *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8 (compliance with rules governing briefs on appeal is compulsory regardless of a party's status); accord *Ryan v. Katz*, 234 Ill. App. 3d 536, 537 (1992); see also *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57 (our supreme court rules, including Rule 341, are not merely advisory suggestions; rather, they are required to be followed). Consequently, where an appellant's brief contains numerous Rule 341 violations and, in particular, impedes our review of the case at hand because of them, it is our right to strike that brief and dismiss the appeal. See *In re Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 38 (citing *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23 (failure to follow Rule 341 may result in forfeiture of consideration of issues on appeal)); see also *Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 38 (quoting *Kic*, 2011 IL App (1st) 100622, ¶ 23 (quoting *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986)) (ultimately, we are " ' "not a depository in which the appellant may dump the burden of argument and research" ' " for her cause on appeal).

¶ 18    In the instant cause, petitioner's brief does not comply with Rule 341(h) in several important respects. That is, save for a general citation to the Act, petitioner's brief does not contain any "Points and Authorities" statement outlining the points argued and authorities cited in the Argument (see Rule 341(h)(1)); it does not contain a viable statement of jurisdiction (see Rule 341(h)(4)); and, while she does provide scant citation to a few pages of the record, petitioner provides essentially no argument, let alone any citation to legal authority for such (see Rule 341(h)(7)). Thus, it is within our prerogative to strike her brief and dismiss this appeal based on her failure to comply with the applicable rules of appellate procedure. See *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 80; accord *Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 38 (the reviewing court has every right to strike a plaintiff's appellate brief and dismiss her cause when Rule 341 is violated so as to impede review). However, we note that, because we have the benefit here of cogent briefs from respondents Commission and Beacon Hill, we choose, in our discretion, to reach the merits of the appeal. See *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14 (reviewing merits of the appeal despite appellant's numerous violations of Supreme Court Rule 341(h)).

¶ 19    Under the Act, it is a civil rights violation to refuse to hire on the basis of unlawful discrimination. 775 ILCS 5/2-102(A) (West 2016). "Unlawful discrimination" is defined in part as discrimination against a person because of her race or skin color. 775 ILCS 5/1-103(Q) (West 2016).

¶ 20    Where a petitioner brings a charge under the Act, the Department shall conduct an investigation to determine whether the allegations are supported by substantial evidence. See 775 ILCS 5/7A-101, 5/7A-102(A)-(D) (West 2016). "Substantial evidence is evidence

which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla" of proof. 775 ILCS 5/7A-102(D)(2) (West 2016). If the Department determines there is no substantial evidence supporting the charge, it shall dismiss the charge. See 775 ILCS 5/7A-102(D)(3) (West 2016). The petitioner may then either commence a civil action in circuit court or, as petitioner did here, file a request for review of the dismissal with the Commission. 775 ILCS 5/7A-102(D)(3) (West 2016).

¶ 21    A final order of the Commission may be judicially reviewed by our Court under the abuse of discretion standard of review. See 775 ILCS 5/8-111(B)(1) (West 2016); *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. Under this standard, we will not disturb the Commission's decision unless it is arbitrary or capricious. See *Young*, 2012 IL App (1st) 112204, ¶ 33. A decision is arbitrary or capricious if it contravenes the legislature's intent, fails to consider a crucial aspect of the problem, or offers an impossible explanation contrary to agency expertise. See *Owens v. Dep't of Human Rights*, 403 Ill. App. 3d 899, 917 (2010).

¶ 22    We review the final order of the Commission, not the Department's decision. See *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). The Commission's findings of fact "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-111(B)(2) (West 2016). This deference to the Commission's findings of fact is particularly true of the credibility determinations it makes. See *Zaderaka*, 131 Ill. 2d at 180; accord *Folbert v. Dep't of Human Rights*, 303 Ill. App. 3d 13, 25 (1999). A reviewing court may not reweigh the evidence or substitute its judgment for that of the Commission, and abuse of discretion will be found only

where no reasonable person could agree with the decision rendered. See *Young*, 2012 IL App (1st) 112204, ¶ 33.

¶ 23    In analyzing claims of employment discrimination brought under the Act, we are guided by federal case law relating to analogous federal anti-discrimination statutes, namely, the Civil Rights Act of 1964, which in relevant part protects against employment discrimination on the ground of race or color (42 U.S.C. § 2000e, *et seq.*). See *Zaderaka*, 131 Ill. 2d at 178 (analyzing an employment discrimination action using federal case law addressing claims under Title VII of the Civil Rights Act of 1964); accord *Owens*, 403 Ill. App. 3d at 918.

¶ 24    Because petitioner in the instant cause has provided no direct evidence of discrimination, we must analyze her claim using the three-part test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). See *Zaderaka*, 131 Ill. 2d at 178-79 (our state courts have adopted this analytical framework as set forth by the United States Supreme Court decisions addressing such claims); *Young*, 2012 IL App (1st) 112204, ¶ 34; accord *Owens*, 403 Ill. App. 3d at 918-19. Under this test, first, petitioner has the burden to establish a *prima facie* case of unlawful discrimination by a preponderance of the evidence. See *Young*, 2012 IL App (1st) 112204, ¶ 34; see, *e.g.*, *Zaderaka*, 131 Ill. 2d at 178-79. If she meets this burden, a rebuttable presumption of unlawful discrimination arises. See *Young*, 2012 IL App (1st) 112204, ¶ 36; see, *e.g.*, *Zaderaka*, 131 Ill. 2d at 179. Second, to rebut this presumption, respondent Beacon Hill must articulate a legitimate, nondiscriminatory reason for its decision. See *Young*, 2012 IL App (1st) 112204, ¶ 36; see, *e.g.*, *Zaderaka*, 131 Ill. 2d at 179 (respondent need only articulate such a reason and is not required to prove it). Third, if Beacon Hill does so, the presumption of unlawful discrimination falls and the burden shifts back to petitioner to prove by a preponderance of the evidence that Beacon Hill's articulated

14

reason was untrue and merely a pretext for discrimination.  See *Young*, 2012 IL App (1st) 112204, ¶ 34; see, *e.g.*, *Zaderaka*, 131 Ill. 2d at 179.  Under this test, the ultimate burden remains with petitioner at all times.  See *Zaderaka*, 131 Ill. 2d at 179; accord *Owens*, 403 Ill. App. 3d at 919.

¶ 25    With respect to the first part of the *McDonnell* test, to establish a *prima facie* case for employment discrimination based on refusal to hire, petitioner here must show: (1) she is a member of a protected class; (2) she applied and was qualified for an open position; (3) she was rejected despite her qualifications; and (4) the position remained open and Beacon Hill sought applicants from individuals having petitioner's qualifications.  See *C.R.M. v. Chief Legal Counsel of Ill. Dept. of Human Rights*, 372 Ill. App. 3d 730, 733 (2007) (these are the particular requirements for a *prima facie* case of discrimination based on failure to hire); accord *Stone v. Department of Human Rights*, 299 Ill. App. 3d 306, 315 (1998).  The failure to demonstrate any one of these *prima facie* elements is fatal to petitioner's cause.  See *C.R.M.*, 372 Ill. App. 3d at 733; accord *Stone*, 299 Ill. App. 3d at 315.

¶ 26    We hold that the Commission did not abuse its discretion in finding petitioner failed to establish a *prima facie* case of employment discrimination based on her race.  The parties do not dispute that petitioner is a member of a protected class (due to her race).  However, petitioner failed to present any evidence with respect to the remaining elements required to establish a *prima facie* case for either of the counts she raised.

¶ 27    First, with respect to the October 2018 count, the evidence presented shows that she applied for a customer service position with one of Beacon Hill's clients.  While that position was open, she clearly did not qualify.  As both Santa-Maria and Abhold explained during the investigation, Beacon Hill's client specifically told them it would not hire anyone with gaps

in their resumes regarding customer service experience. Petitioner had a 13-year gap in her customer service experience. As her own resume, which is part of the record here, makes abundantly clear, she had not worked in that line of employment since 2005. Accordingly, she was not qualified for the customer service position for which she applied. Additionally, the evidence shows that she was not rejected despite her qualifications; rather, contrary to her insistence, she was rejected precisely because she lacked the required qualifications, *i.e.*, no gaps in customer service experience. Furthermore, petitioner admitted that, not only did no one at Beacon Hill (Santa-Maria and Abhold included) ever mention anything about her race, she also did not know who was hired for that position or what their race, or qualifications for that matter, were. She claimed only that she was "mistreated." She provided none of the required evidence to prove a *prima facie* case for employment discrimination based on refusal to hire due to race.

¶ 28    The same is true for the November 2018 count. Petitioner insists that when she was not hired for the customer service position, Santa-Maria reached out to her and told her she qualified for a market research position and that she was hired for that particular position with one of Beacon Hill's clients. However, Santa-Maria and Abhold made clear during the investigation that there was never a market research position ever open at Beacon Hill and that petitioner was never considered or interviewed for such. In fact, Abhold explained in detail that Beacon Hill does not recruit for market research positions, no such position was ever open within Beacon Hill or any of its clients at that time, and no one at Beacon Hill ever told petitioner she was being considered for a market research position; Beacon Hill does not advertise for potential market research employment and definitely did not do so in November 2018. Yet, petitioner, incredulously, wrote an email to Beacon Hill's corporate headquarters

16

wherein she insisted that Beacon Hill had a market research position open, declared herself as its new hire, and established her own start date of December 4, 2018. Moreover, petitioner was not rejected despite her qualifications. Simply put, she could not be rejected for a job that did not exist. And, again, petitioner admitted that no one at Beacon Hill ever commented about her race in any way and she did not know whether someone, or whom, was hired to fill the position (which, again, did not exist). She only presumed that a lesser-qualified non-black individual was hired instead of her.

¶ 29   The Department's investigation further showed that petitioner herself made discriminatory requests and acted repeatedly in an unprofessional manner, which, alone, and apart from her lack of qualifications for one job she sought and the fact that the other she applied for did not even exist, provided a valid basis for Beacon Hill's refusal to hire her. The evidence from the investigation revealed that petitioner left a voicemail message for Santa-Maria announcing that she wanted to work only with men and demanded to be assigned accordingly. (She repeated this in writing in the email she sent to corporate, insisting that this was her legal right which needed to be honored.) Santa-Maria described that this was not only off-putting and unprofessional, but also discriminatory and something Beacon Hill specifically never entertained nor would ever entertain, not with any of its clients nor any of its applicants seeking employment, based on race, sex, age, disability or any other characteristic. Petitioner's response to this was to leave another voicemail message for Santa-Maria, this time threatening to send, and then actually sending, an email to corporate which blasted Santa-Maria and attributed several false statements directly to her, including that Santa-Maria offered her a job with a Beacon Hill client, that the job was for a "Project Surveyor," and that they had already discussed a start date for her. Then, even more

17

remarkably, a few days later, petitioner sent an email to Santa-Maria, clearly escalated in tone, this time demanding a start date and declaring that she had recorded their telephone conversations, which, notably, is illegal, and threatening to report her to corporate a second time to "ensure" that she (petitioner) would be "respectfully served," which to petitioner clearly meant she should be hired immediately.

¶ 30     Again, petitioner's claim here is that she was not hired because of her race and that similarly situated non-black applicants were treated more favorably (hired) by Beacon Hill. In her words, there was "direct evidence of racism" against her as Santa-Maria, Abhold and Beacon Hill were "trying to discredit her good work ethics" as "a qualified black female candidate." She insists that Santa-Maria and Abhold were nothing more than "unprofessional and racist white female[s]" who, along with Beacon Hill's "very racist" "upper management," were using "racially oppressive tactics against her race, black, as a qualified and successful american candidate" in violation of her employment rights. Her claim, however, cannot stand. She presented absolutely no evidence of what she proposes. That is, no evidence was ever submitted demonstrating that other applicants of any race who also had gaps in their customer service resume, or who attempted to apply for a market research position that did not exist, were somehow hired by Beacon Hill and placed with clients for employment.

¶ 31     Instead, and in direct contrast to petitioner's claims, Beacon Hill submitted during the investigation its employment placement records for the year encompassing the incidents raised by petitioner. Between January 2018 and January 2019, Beacon Hill placed 76 applicants with the same client for whom petitioner applied; of these 76 people placed, 55 of them--72%--were black. This, in addition to the other documentation presented, which

18

included Beacon Hill's Equal Employment Opportunity/Affirmative Action Policy Statement stating it does not discrimination on the basis of race (among other factors) and administers all the terms of its employment in a non-discriminatory manner, and petitioner's signed application which specifies that nothing contained therein nor an interview with Beacon Hill amounted to a promise or contract for employment, all refute any argument petitioner could attempt to make that Beacon Hill refused to hire her despite her qualifications and because of an animus against her race. See *C.R.M.*, 372 Ill. App. 3d at 733 (*prima facie* discrimination claim for failure to hire requires evidence that similarly situated person in comparable circumstances was hired despite the petitioner's qualifications for the position sought). From all this, it is obvious that petitioner failed to meet her burden of establishing a *prima facie* case of refusal to hire based on her race by a preponderance of the evidence, and the Commission properly dismissed her cause.

¶ 32      Even if it could somehow be concluded that petitioner did meet her burden of establishing a *prima facie* case (which it cannot), and, thus, a rebuttable presumption of unlawful discrimination can be said to have arisen here (which it did not), we note for the record that Beacon Hill articulated legitimate, nondiscriminatory reasons for its actions. As we have already described, Beacon Hill provided, and petitioner signed, an application stating that neither filling it out nor the grant of an interview equated to a promise or contract for employment. And, as we have already discussed at length, petitioner acknowledged her signature on the application, proceeded to ignore these notifications, repeatedly violated professional norms, directly exhibited discriminatory requests, provided a resume clearly showing she was not qualified for the job position available, applied for a second job that never existed, attributed false allegations to those in positions to hire her, illegally recorded

telephone conversations, used them to threaten a recruiter to give her a job, and then reported that recruiter to corporate.

¶ 33    Continuing along these hypothetical lines, assuming petitioner established a *prima facie* case, and with Beacon Hill then having articulated legitimate reasons for its refusal to hire her, any presumption of unlawful discrimination would fall here and the burden would shift back to petitioner to prove, by a preponderance of the evidence, that Beacon Hill's reasons were a pretext for discrimination. Just as with the other required elements of her cause, this, she cannot do. She provides absolutely no evidence of a pretext for discrimination here by Beacon Hill against her, other than her wild speculation and her claims that certain employees were "jealous" of her and her credentials and, according to her, lied. See *Folbert*, 303 Ill. App. 3d at 25 ("[a] petitioner's discrimination charge consisting of mere speculation and conjecture does not constitute substantial evidence"); *Roedl v. Midco Int'l*, 296 Ill. App. 3d 213, 219 (1998) (a petitioner's insistence that certain witnesses "were not worthy of belief" by Department does not constitute substantial evidence of pretext); see also *Karazanos v. Navistar Int'l Trans. Corp.*, 948 F.2d 332, 337-38 (7th Cir. 1991) (a petitioner's perception of herself as an employee is irrelevant, as focus is on perception of the employer with respect to the employee's work, and a petitioner's assertions blaming others for her work-related shortcomings, alone, does not create issue of pretext). Again, neither Santa-Maria nor Abhold nor anyone else at Beacon Hill—by petitioner's own admission— ever mentioned anything about race in general or petitioner's race in particular. Even if they had, and even if Beacon Hill set out to treat petitioner less favorably than other applicants because of her race or, as she insists, violate her right to employment, it is wholly unlikely that they would have tried, as Santa-Maria initially did, to find positions other than the

20

customer service job for which she could be qualified, *i.e.*, the business dialer position Santa-Maria and Abhold suggested for her, or interview her to determine what skills she had that might suit other clients, which, again, Santa-Maria and Abhold did, in both October and November 2018. See *Young*, 2012 IL App (1st) 112204, ¶ 48 ("[u]nder the Act, the unfairness or unreasonableness of an employer's conduct is irrelevant, so long as it was not motivated by an employee's protected characteristic").

¶ 34    Ultimately, the Commission's dismissal of petitioner's charge of employment discrimination due to failure to hire was proper, as there was a complete lack of any substantial evidence. Petitioner failed to meet the required elements of a *prima facie* case and, even if such a case could be made, Beacon Hill provided several non-pretextual reasons for its refusal to hire her that petitioner cannot show, nor has shown, were untrue. Having failed to present any substantial evidence to satisfy any of the burdens required of her, the Commission properly dismissed her charge.

¶ 35                                    CONCLUSION

¶ 36    Accordingly, for the foregoing reasons, we affirm the Commission's order sustaining the Department's dismissal of petitioner's charge for lack of substantial evidence.

¶ 37    Affirmed.