2025 IL App (1st) 241612-U

No. 1-24-1612

Order filed July 14, 2025

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| TRACEY J. ELLIS, | ) | Petition for Direct Review of an |
| | ) | Order of the Illinois Human |
| Petitioner, | ) | Rights Commission |
| | ) | |
| v. | ) | Charge No. 2023 CF 2009 |
| | ) | |
| THE DEPARTMENT OF HUMAN RIGHTS, THE | ) | |
| HUMAN RIGHTS COMMISSION, and HOME DEPOT | ) | |
| U.S.A., INC., | ) | |
| | ) | |
| Respondents. | ) | |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The Illinois Human Rights Commission's final order sustaining the dismissal of petitioner's employment discrimination charge for lack of substantial evidence is affirmed.

¶ 2    Petitioner Tracey Ellis appeals *pro se* from a final order entered by respondent the Illinois Human Rights Commission (Commission) sustaining respondent the Illinois Department of Human Rights' (Department) dismissal of her charge of discrimination alleging that respondent

Home Depot U.S.A., Inc. (Home Depot) discriminated against her when it failed to hire her on the basis of her race and color. We affirm.

¶ 3    Home Depot is a chain of home improvement retail stores with locations throughout the country. Ellis submitted an employment application for a Merchandising Execution Associate (MEA) position at the Home Depot located in Mount Prospect, Illinois and interviewed for the position on April 4, 2023. On April 23, 2023, she learned that she was not hired for the position.

¶ 4    On April 28, 2023, Ellis filed the instant charge with the Department, and perfected the charge on August 15, 2023. Ellis alleged that she was not hired for the MEA position based on her race (black) and color (light-complexioned). She asserted that Home Depot hired a less qualified, non-black and non-light complexioned applicant for the position.

¶ 5    The Department investigated the charge and prepared a report dated March 20, 2024. As a part of its investigation, the Department interviewed Ellis and Kimberly Dawsonia Ashford, a Home Depot "EEO" compliance manager.

¶ 6    Ellis told the Department investigator that she applied for an MEA position through Home Depot's website. On April 4, 2023, she interviewed in-person for the position with Robert Prozel, supervisor of the merchandising execution team, at the Mount Prospect store location. During the interview, Prozel told Ellis that she would be a "good fit" for the position. A female staff member gave her a tour of the store and explained the position's duties. At the end of the interview, Ellis asked Prozel if he was still interviewing other candidates, and he indicated that he had two more interviews.

¶ 7    On April 23, 2023, Ellis received a call from Natalie Chiatpetta, an associate support department supervisor, who informed her that she was not hired for the position.

¶ 8    Ashford told the Department investigator that Home Depot's corporate offices handles the staffing procedures for local stores, including screening applications and scheduling interviews. The local store makes the final hiring decision, and the other applicants are informed that the position has been filled.

¶ 9    Ashford stated that applicants must meet minimum job qualifications and be available to work the required schedule for an open position. Home Depot's job postings typically include the work schedule and applications request confirmation of an applicant's schedule availability. Position starting times are "non-negotiable," and an individual with Prozel's title would have no authority to change the start time.

¶ 10    Home Depot received Ellis's application on or around March 28, 2023. Ellis indicated she was available to work weekdays, weekends, and all available shift times, including the morning 6 a.m. to noon shift.

¶ 11    Prozel interviewed Ellis for the morning position on April 4, 2023. When asked if she was still available to work the morning shift that started at 6 a.m., Ellis stated she would not be able to start until 8 a.m. due to transportation issues. At no time during the interview did Prozel extend an offer of employment to Ellis.

¶ 12    Prozel conducted approximately 13 interviews for the position, and decided not to hire Ellis and one other applicant because they were unable to meet the required start time. Chiatpetta informed Ellis of the decision and asked if she wanted to speak with Prozel for feedback on why she was not hired. Ellis declined.

¶ 13    Ashford also told the investigator that Home Depot had policies which allowed non-employees to report discrimination, both online and through posted hotline numbers in stores.

Home Depot investigates any such complaint. Ashford had no record of Ellis making any complaints of discrimination or harassment about the hiring process.

¶ 14 Ashford provided the hiring information for the MEA position for which Ellis applied. Of the 13 applicants who were hired for the same position between June 2022 and March 2023, 2 were Asian, 6 were Caucasian, and 5 were Hispanic.

¶ 15 The Department investigator recommended a finding of lack of substantial evidence on both counts. It was uncontested that during her interview, Ellis disclosed that she would be unable to start at the required 6 a.m. start time for the position. She provided no evidence that a lesser qualified, non-Black, non-light complexioned individual was hired for the position. Ellis also failed to provide any evidence of a pretext for the failure to hire.

¶ 16 On March 20, 2024, the Department accepted the investigator's recommendations and dismissed Ellis's charge for lack of substantial evidence.

¶ 17 Ellis filed a request for review with the Commission.

¶ 18 On July 16, 2024, the Commission issued a final order sustaining the dismissal for lack of substantial evidence. The Commission found that Ellis failed to establish a *prima facie* case of discrimination, as she was not qualified for the position due to her inability to meet the required start time of 6 a.m. It also found that there was no evidence that Home Depot had hired someone outside of Ellis's protected classes for the position and allowed them to start at 8 a.m. instead of 6 a.m.

¶ 19 Ellis filed a timely *pro se* petition with this court for administrative review.

¶ 20 On appeal, Ellis seeks reversal of the Commission's decision sustaining the dismissal of her charge.

¶ 21   As an initial matter, we agree with the Commission that Ellis arguably forfeited review of the Commission's decision on the merits. Under Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), a brief must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." The rule further provides that "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." *Id*. In contravention of Rule 341(h)(7), Ellis fails to develop substantive arguments supported with citations to relevant legal authority challenging the Commission's finding that she failed to establish a *prima facie* case.

¶ 22   Ellis' brief fails to comply with Rule 341(h), which provides mandatory procedural rules for all appellants that govern the content and format of appellate briefs. *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8. Supreme court rules are not mere suggestions, and we may strike a brief and dismiss an appeal for failure to comply with the rules. *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14.  Nevertheless, as the issues are not complex and we have the benefit of the Commission's and Home Depot's briefs, we choose to consider the merits of plaintiff's appeal. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001) (finding meaningful review was not precluded, as merits of appeal could be ascertained from record).

¶ 23   The Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2022)) deems it a civil rights violation for an employer "to refuse to hire, *** on the basis of unlawful discrimination" premised, *inter alia*, on race or color. *Id.* §§ 1-102(A), 2-102(A).

¶ 24   After a charge alleging a civil rights violation under the Act is filed, the Department must investigate the allegations and may dismiss a charge upon a determination that there is no

"substantial evidence" supporting the charge. *Id.* §§ 7A-102(C), (D)(3). "[S]ubstantial evidence" is defined as "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." *Id.* § 7A-102(D)(2). A charge alleging "mere speculation and conjecture does not constitute substantial evidence." *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999).

¶ 25    Following the Department's dismissal of a charge, the complainant may request the Commission's review of the dismissal. 775 ILCS 5/7A-102(D)(3) (West 2022). If the Commission sustains the dismissal, the complainant may seek review of the Commission's order directly in this court. *Id.* § 8-111(B)(1).

¶ 26    This court reviews the decision of the Commission, not the Department. See *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). The parties disagree as to our standard of review, but well-settled case law establishes that we review the Commission's decision for an abuse of discretion. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶¶ 31-32. We will reverse a dismissal sustained by the Commission only where the decision was arbitrary or capricious. *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 917 (2010).

¶ 27    A decision is arbitrary or capricious where "it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be considered as the result of an exercise of the agency's expertise." *Young*, 2012 IL App (1st) 112204, ¶ 33. We will not reweigh the evidence or substitute our judgment for that of the Commission. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88

(1992). The Commission's decision should be affirmed "[i]f the record contains evidence to support the agency's decision." *Id.*

¶ 28    In actions raising civil rights violations, Illinois courts have adopted the three-part test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Zaderaka,* 131 Ill. 2d at 178-79. Under this test, the petitioner must first establish by a preponderance of the evidence a *prima facie* case of unlawful discrimination. *Id*. at 179-80. If established, a rebuttable presumption arises that the employer unlawfully discriminated against the petitioner. *Id.* at 178-79. The employer must rebut the presumption by articulating, not proving, a legitimate, nondiscriminatory reason for its decision. *Id.* at 179.

¶ 29    If the employer articulates a legitimate reason, the petitioner must prove, by a preponderance of the evidence, that the employer's reason was untrue and a pretext for discrimination. *Id.* "Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer." *Lau v. Abbott Laboratories*, 2019 IL App (2d) 180456, ¶ 55. The burden of persuasion remains on the petitioner throughout the proceeding. *Zaderaka,* 131 Ill. 2d at 179.

¶ 30    To establish a *prima facie* case of employment discrimination for failure to hire, a complainant must show that (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected despite her qualifications; and (4) after being rejected, the position remained open and the employer sought other applicants who possessed the same qualifications as complainant. *Stone v. Department of Human Rights*, 299 Ill. App. 3d 306, 315 (1998). An employer is not required to hire an applicant merely because the applicant is in a protected class if she is only equally or less qualified than an applicant who is hired. *Id.*

¶ 31 Here, the Commission did not abuse its discretion when it found that Ellis failed to establish a *prima facie* case of discrimination on the basis of race or color. While there is no dispute that Ellis is a member of a protected class, she failed to present evidence with respect to the remaining elements required to establish a *prima facie* case of discrimination.

¶ 32 Ellis alleged that she was discriminated against based on her race and color when she was not hired for the MEA position despite her qualification for that position. Ellis's application indicated that she was available for all shifts, including the morning shift that began at 6 a.m. However, she told Prozel during the interview that she was unable to start at the required 6 a.m. start time. As such, Ellis was not a qualified candidate for the position. Scheduling requirements for the job were non-negotiable and Prozel lacked authority to alter the position's start time. Ellis's lack of qualification for the 6 a.m. MEA position alone defeats a *prima facie* case of unlawful discrimination for failure to hire. See *C.R.M. v. Chief Legal Counsel of Illinois Department of Human Rights*, 372 Ill. App. 3d 730, 733 (2007) (finding the discrimination claim failed where the complainant could not establish an element of the *prima facie* case).

¶ 33 Nevertheless, Ellis claims that Prozel stated that he would assist in accommodating the shift start time from 6 a.m. to 8 a.m. and he "prefers his own." She asserts that the Commission's findings must be reversed on her "facts shown," "her charge remains true and correct, and the Commission[']s findings [are] completely false." Essentially, Ellis requests that this court reweigh evidence in her favor to find a *prima facie* case of discrimination, which this court cannot do. *Young*, 2012 IL App (1st) 112204, ¶ 33 ("the court may not reweigh the evidence or substitute its judgment for that of the Commission."). Ellis sets forth no basis, and the record does not show any basis, for this court to overturn the Commission's decision finding that she failed to establish a

*prima facie* case of unlawful discrimination where she could not meet the required shift starting time of 6 a.m. See *Folbert*, 303 Ill. App. 3d at 25 ("A petitioner's discrimination charge consisting of mere speculation and conjecture does not constitute substantial evidence.").

¶ 34    Even if Ellis had established a *prima facie* case of discrimination, Home Depot set forth a legitimate and nondiscriminatory reason for its decision not to hire her: she could not meet the scheduling requirements for the position. Home Depot also provided evidence that Ellis was not the only candidate rejected from the position for that reason. Ellis provided no evidence in rebuttal to show that Home Depot's reason was pretextual. We therefore find that the Commission's final order sustaining the IDHR's dismissal of Ellis's discrimination charge for lack of substantial evidence was not an abuse of discretion.

¶ 35    As a final matter, Ellis contends that the Commission erred in failing to subpoena Home Depot for comparative applicant evidence, suggesting that the Commission was purportedly in violation of administrative procedures. However, Ellis failed to raise this issue before the Commission. As such, she has forfeited review of the issue by this court. See *Demsa v. Adams*, 2013 IL App (1st) 122608, ¶ 52 ("It is well settled that on administrative review a party forfeits any issue that it failed to raise in proceedings before the administrative agency.").

¶ 36    For the foregoing reasons, the final order of the Commission is affirmed.

¶ 37    Affirmed.